UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CEQUENT TRAILER PRODUCTS, INC.,

        Plaintiff,

   -vs-                                         Civil Action No.:
                                              05-CV-0074 (NAM/GJD)

DIVERSI-TECH CORP.,

        Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY BASED ON ANTICIPATION**

                                                                          WALL MARJAMA & BILINSKI LLP
                                                                          101 South Salina Street
                                                                          Suite 400
                                                                          Syracuse, New York 13202
                                                                           Tel: (315) 425-9000
                                                                           Fax: (315) 425-9114

                                                                          *Attorneys for Defendant*
                                                                             *Diversi-Tech Corporation*

Of Counsel:
  James R. Muldoon

TABLE OF CONTENTS

| | | |
|---|---|---|
| PRELIMINARY STATEMENT | | 3 |
| STATEMENT OF FACTS | | 3 |
| I. | APPLICABLE LEGAL STANDARDS | 5 |
| | A. Summary Judgment | 5 |
| | B. The Presumption of Validity | 6 |
| | C. Anticipation | 7 |
| | D. Obviousness | 8 |
| III. | ARGUMENT | 9 |
| | A. The Invention Claimed in the '686 Patent Was Publicly Known Prior to the Invention by Plaintiff | 9 |
| | B. The Invention Claimed in the '686 Patent was in Public More Than One Year Prior to the '686 Patent's Filing Date | 12 |
| |     1. Displays of Budge's Prototype by Budge to Various Dealers and by Dealers to Their Customers are Invalidating Public Uses | 13 |
| |     2. The Displays of Mr. Budge's Prototype Were Not Experimental Uses | 15 |
| | C. Diversi-Tech Reserves the Right to Argue Obviousness as an Additional Basis of Invalidity | 17 |
| CONCLUSION | | 18 |

**PRELIMINARY STATEMENT**

Defendant Diversi-Tech Corporation ("Diversi-Tech") respectfully moves for summary judgment that Plaintiff's U.S. Patent No. 6,722,686 ("the '686 patent") is invalid under 35 U.S.C. § 102(a) and (b) because the subject matter of the asserted claims was previously known or disclosed by others in the United States before the invention thereof by Plaintiff and was in public use more than one year prior to the filing date of the application of the '686 patent. Consequently, Diversi-Tech should be granted summary judgment declaring the claims of the '686 patent to be invalid.

**STATEMENT OF FACTS**

The '686 patent, entitled "Coupler Locking Device and Method," discloses and claims an oversized padlock used to prevent the theft of an unattended trailer. The application that ultimately issued as the '686 patent was filed on May 23, 2002. *See* '686 patent, Muldoon Decl. Exhibit E. The lock is broadly described as including (1) a locking bar, that is shown in the embodiment as a U-shaped shackle; and (2) a base having: (i) a plug that fits within the trailer hitch when engaged; (ii) at least one aperture in the base for receiving the locking bar/shackle; and (iii) an integral locking mechanism.

Mr. Paul Budge, Manager of Defendant Diversi-Tech, more than 20 months prior to Plaintiff's filing of its patent application, independently invented and built a universal coupler lock that incorporates all of the claimed limitations of the '686 patent. On August 28, 2000, in order to document the development of his prototype lock, Mr. Budge took a copy of a drawing of his prototype lock to a notary public, Diane McDaniel of St. George, Utah, who signed and notarized the document. Budge Decl. ¶ 7. A copy of the notarized drawing is attached to the Budge Declaration as Exhibit A. On April 19, 2005, after being served with the Complaint in

this action, Mr. Budge returned to Ms. McDaniel and had her attest that she had previously notarized the document and provided Mr. Budge with a copy of her notary log from August 2000, which is attached to the Budge declaration as Exhibit B.  Budge Decl. ¶ 8.

In addition to the drawings, Mr. Budge built several prototypes of this first coupler lock design in the summer and fall of 2000. Budge Decl. ¶¶ 9-10.  Beginning in approximately August 2000 and continuing through at least April 2001 (more than one year prior to the filing date of Plaintiff's patent application), Mr. Budge publicly showed his prototype to at least six commercial dealers of trailer accessories in the State of Utah.  The commercial establishments that Mr. Budge showed prototypes of this first coupler lock design include: Dixie Automotive and Trailer Sales, St. George, UT; TJ's Rentals and U-HAUL, St. George, Utah; Petersen Marine, in Ogden, UT; Big Bubba's Trailers, in Ogden; T.J's Trailers in Ogden, and Wasatch Trailers in Layton, UT.  Budge Decl. ¶¶ 10-12.  Moreover, Mr. Budge provided samples of one of his prototype locks to two different dealers in St. George, Utah, who publicly displayed the lock in their showrooms.  Budge Decl. ¶¶ 10-12; Jon Rimer Decl. ¶¶ 2-5; James Rimer Decl. ¶¶ 2-5; Brian Musgrave Decl. ¶¶ 2-6; Larry Musgrave Decl. ¶¶ 2-6.  One of the local dealers, Dixie Automotive and Trailer Sales, displayed the prototype to the Country Christmas Western Gift Expo held during the National Finals Rodeo in Las Vegas, Nevada, in December 2000.  Brian Musgrave Decl. ¶¶ 3-6; Larry Musgrave Decl. ¶¶ 3-6; Budge Decl. ¶ 12.  A photograph of one of the prototype locks of the type Mr. Budge showed to such commercial dealers, and of the type that was shown by the dealers in St. George, is attached to the Budge Declaration as Exhibit C.  Declarations of four known witnesses to the public use and displays of Mr. Budge's prototype locks are submitted in support of this motion.  Each of the witnesses indicates that the coupler lock that they displayed in their establishment and at a trade show was substantially the same as

that depicted in the notarized drawing dated August 28, 2000, a copy of which is attached to each declaration.  Jon Rimer Decl. ¶¶ 4-5; James Rimer Decl. ¶¶ 4-5; Brian Musgrave Decl. ¶¶ 4-6; Larry Musgrave Decl. ¶¶ 4-6.

After the Expo and Rodeo, Dixie Automotive's employees, Brian Musgrave and Larry Musgrave, shared the comments they received from people to whom they showed the lock at the Expo.  Budge Decl. ¶ 12.  After considering the comments from the dealers, their customers and the attendees of the Expo, Mr. Budge refined his lock to include (a) a wider body and shackle to fit several wide versions of trailer couplers not accommodated by the first design, (b) a multi step uni-ball that accommodated all ball socket sizes between 1 - 7/8" to 2 - 5/16" and (c) a second locking slide to lock both legs of the shackle.  Budge Decl. ¶ 20.  On August 10, 2001, Mr. Budge again had a notary public and his patent attorney sign or witness a copy of a drawing of this refined design.  Budge Decl. ¶ 20.  A copy of this drawing is attached to the Budge Declaration as Exhibit D.

## I.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 824 (Fed. Cir. 1999).  Patent cases are no different.  *See, e.g., Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984) ("[T]he court should utilize the salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources.").

Summary judgment in a patent case is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001) (affirming summary judgment of invalidity based on anticipation); *Brown v. 3M*, 265 F.3d 1349, 1351-52 (Fed. Cir. 2001) (same); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714 (Fed. Cir. 1991) (affirming summary judgment of invalidity based on obviousness).

When a defendant moves for summary judgment on an affirmative defense, it must show the absence of a genuine issue of material fact and establish the elements of its defense. *See Crescent Towing & Salvage Co. v. M/V Anax,* 40 F.3d 741, 744 (5th Cir. 1994). Once a defendant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992) (affirming summary judgment based on a Section 102(b) violation: "On summary judgment, once alleged infringer has presented facts sufficient to establish a *prima facie* case premised on Section 102(b), the patent holder must 'come forward with convincing evidence to counter that showing.'") (internal citation omitted). A party may not overcome a grant of summary judgment by merely offering conclusory statements, instead it must set forth specific facts demonstrating there is a genuine material issue for trial. *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000); *Matthews v. Wozencraft,* 15 F.3d 432, 436 (5th Cir. 1994); *S.E.C. v. Spense & Green Chem. Co.*, 612 F.2d 896, 900 (5th Cir. 1980).

### B. The Presumption of Validity

The parties' respective burdens on summary judgment are inextricably linked to their burdens of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Issued patents are presumed valid under 35 U.S.C. § 282. The party challenging the validity of a patent has the

4

burden of proving invalidity by clear and convincing evidence. *Ryko*, 950 F.2d at 715-16. In challenging the validity of a patent, a party must present relevant evidence to be considered by a court in its determination of the anticipation and/or obviousness issues. *See Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571-72 (Fed. Cir. 1988).

Once evidence has been adduced to establish a *prima facie* case of invalidity, the patentee must present evidence to rebut invalidity. *See Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 293 (Fed. Cir. 1985). The evidence of invalidity and validity is then examined by the court to determine whether the patent is invalid. *See Rohm & Haas Co. v. Mobil Oil Corp.,* 718 F. Supp. 274, 285 (D. Del. 1989), *aff'd* 895 F.2d 1421 (Fed. Cir. 1990). The presumption of validity is more easily overcome where the evidence consists of prior art not considered by the Examiner during prosecution. *See Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358-60 (Fed. Cir. 1984). However, the Federal Circuit has recognized that prior art that was before the Examiner can be such that:

> There is the occasional reference which contains disclosure so poignantly impacting upon patentability as to render virtually irrelevant the fact of its consideration by the examiner during prosecution.

*Lear Sigler, Inc. v. Aeroquip Corp.,* 733 F.2d 881, 886 n.4 (Fed. Cir. 1984).

### C. <u>Anticipation</u>

Under 35 U.S.C. § 102, a prior art reference anticipates and therefore invalidates a patent claim if it discloses "each and every limitation of the claimed invention," is "enabling," and describes the claimed invention "sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994). Although anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact. *Telemac*, 247 F.3d at 1327 (citing *Gen.*

5

*Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353 (Fed. Cir. 1999); *Brown*, 265 F.3d at 1351-52. The classic test for anticipation provides: "That which will infringe, if later, will anticipate, if earlier." *Knapp v. Morss*, 150 U.S. 221 (1893). Moreover, the prior art need not be identical to the claimed invention but will bar patentability even if it is an obvious variant thereof. *In re Foster*, 343 F.2d 980, 145 USPQ 166 (CCPA 1966); *LaBounty Mfg. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1071 (Fed. Cir. 1992).

### D. Obviousness

"A claimed invention is unpatentable due to obviousness if the differences between it and the prior art 'are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, No. 03-1007, 2003 WL 22121694, at *8 (Fed. Cir. Sept. 15, 2003) (quoting 35 U.S.C. § 103(a)). "It is black letter law that the ultimate question of obviousness is a question of law." *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). However, that legal conclusion is based on the factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966), including the scope and content of the prior art; the differences between the claims and the prior art; the level of ordinary skill in the pertinent art; and secondary considerations, such as commercial success, long felt but unsolved needs, and failure of others to invent. *Ryko*, 950 F.2d at 716.

When a rejection depends on a combination of prior art references there must be some teaching, suggestion, or motivation to combine the references. *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996). Such a suggestion may be found in the references themselves, or:

> [I]t may come from knowledge of those skilled in the art that certain references, or disclosures in the references, are known to be of special interest or importance in the particular field. . . . It may also come

6

>from the nature of a problem to be solved, leading inventors to look to references relating to possible solutions to that problem.

*Id.* At 1573.  Therefore, "[w]hen determining the patentability of a claimed invention which combines two known elements, 'the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination.'" *In re Rouffet*, 149 F.3d 1350, 1356 (Fed. Cir. 1998) (citations omitted).

### III.  ARGUMENT

#### A.  The Invention Claimed in the '686 Patent Was Publicly Known Prior to the Invention by Plaintiff

Under 35 U.S.C. § 102(a), "[a] person shall be entitled to a patent unless . . . ***the invention was known or used by others in this country***, or patented or described in a printed publication in this or a foreign country, ***before the invention thereof by the applicant*** for patent."  The statutory language "known or used by others in this country", means knowledge or use which is accessible to the public.  *Carella v. Starlight Archery*, 804 F.2d 135 (Fed. Cir. 1986).  The knowledge or use is accessible to the public if there has been no deliberate attempt to keep it secret.  *W. L. Gore & Assoc. v. Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983).

The date when an application adequately disclosing the subject matter is filed is presumed to be the date of invention. *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000), *cert. denied*, 121 S.Ct. 1607 (2001).  Diversi-Tech has provided substantial evidence of the prior invention by Paul Budge predating the filing of the '686 patent application by more than twenty months.  The evidence includes testimony of the prior invention by Paul Budge, corroborating documents establishing conception by Mr. Budge no later than the date of the notarized drawing of August 28, 2000, photographs of the prototype

7

constructed in mid-late 2000 (which will also be available at argument of this motion for the Court's inspection), and declarations of four disinterested witnesses to the public disclosure by Mr. Budge of his prototype.  Each of the witnesses establishes the public displays of the prototype to consumers in late 2000 and early 2001 at their commercial businesses in St. George, Utah, as well as the public display of the prototype at a trade show in Las Vegas, Nevada, in December 2000.

The identical nature between Mr. Budge's prototype and the claims of the '686 patent ("identity of invention") is established by the corroborating drawing, photograph and testimony of Mr. Budge and the disinterested witnesses.  Mr. Budge's declaration explains, by reference to the drawing and photograph, the structure and operation of his prototype lock design.  Budge Decl. ¶¶ 14-19.  As established by the claim chart appended hereto, each element and limitation of the claims of the '686 patent is present in the drawing and the prototype.  Mr. Budge's drawing and photograph depict the assembled trailer coupler lock.

The first component of the lock is a U-shaped shackle, which in the notarized drawing is labeled the "axle shackle lock bar."  In the prototype, the shackle was an axle support brace from an old automobile or truck that Mr. Budge owned.  Each leg of the shackle has threaded grooves over approximately the lower two inches of the legs.  Budge Decl. ¶¶ 14-15.

The next component is the housing which Mr. Budge machined out of a block of aluminum.  The housing has two holes at each end of the block extending all of the way through the housing into which the legs of the shackle are inserted. A trailer hitch ball is attached to the top of the housing by a countersunk screw that extends through the vertical axis of the ball and mates with a tapped hole on the upper surface of the housing.  The ball fits within the socket of the trailer coupler, and the U-shaped portion of the shackle is placed over the top of the trailer

coupler. The coupler, depicted by dashed lines on the drawing, is clamped between the ball and the shackle in the locked position as shown in the drawing. Budge Decl. ¶¶ 16-17.

The housing has an integral locking mechanism, which in the prototype includes a keyed lock cylinder and cam rod, a slide pin and a biasing spring. The keyed lock cylinder and cam were purchased at a local hardware store and were of the type used in standard mailboxes. Mr. Budge machined the slide pin to mate at one end with the cam rod of the lock. He placed serrations at the other end of the slide pin which engage the threaded grooves on one of the shackle legs when the key is rotated to the locked position. The drawing shows the motion of the slide pin with linear arrow and in the two positions. The first position is unlocked (to the right) where the serrations are withdrawn into the housing and do not engage the shackle. The second position of the slide pin is locked (to the left) where the serrations extend slightly into one of the holes through which a shackle leg is inserted and engage the threaded grooves and prevent further movement of or lock the shackle. The spring biases or holds the slide pin so that the serrations remain engaged with the threaded grooves until the keyed lock and cam rod are rotated to the unlocked position. Budge Decl. ¶ 18.

Because the threaded grooves are uniform on each leg of the shackle and the serrations on the end of the slide pin are much shorter than the threaded portion of the shackle leg, the slide pin is capable of locking the shackle at a number of locations to accommodate trailer couplers of varying heights. Budge Decl. ¶ 19.

Where a challenger to an issued patent has presented prima facie evidence of patent invalidity as Diversi-Tech has here, the burden of production shifts to the patentee to attempt to prove an earlier date of invention to escape the invalidating nature of the prior art. *Mahurkar v. C. R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996), *aff'd after remand*, 155 F.3d 574 (Fed.

9

Cir. 1998). However, in meeting this burden of production, the patentee must comply with the requirement of corroboration of mere oral testimony of an inventor. *Id*. at 1579. The requirement for corroboration is not new to patent law. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993), citing *Mergenthaler v. Scudder*, 11 App. D.C. 264, 1897 C.D. 724 (D.C. Cir. 1897). As Diversi-Tech has provided corroborated evidence of a date of invention in August 2000, Plaintiff must meet its burden of producing potential evidence of an invention date prior to Budge's invention. Such evidence is within the exclusive knowledge and possession of Cequent and/or its agents and, therefore, if Plaintiff fails to produce corroborated evidence establishing a date of invention prior to August 28, 2000, Diversi-Tech is entitled to summary judgment that the claims of the '686 patent are invalid under 35 U.S.C. § 102(a).

  **B.**  **The Invention Claimed in the '686 Patent was in Public Use More Than One Year Prior to the '686 Patent's Filing Date**

Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless ... the invention was ***in public use*** or on sale in this country, ***more than one year prior to the date of the application*** for patent in the United States. . . ." 35 U.S.C. § 102(b) (*emphasis added*). Section 102(b) is implicated where the public use or sale is by the patentee, an accused infringer or a third party. In this motion, Diversi-Tech is relying upon the actions of Paul Budge and the commercial dealers to whom he provided his prototype for display in their shops to invalidate the claims of the '686 patent. Any "nonsecret" use of an invention by someone unconnected to the inventor, such as someone who has independently made the invention, in the ordinary course of a business for trade or profit may be a "public use". *Bird Provision Co. v. Owens Country Sausage, Inc.*, 568 F.2d 369, 374-76, 197 USPQ 134, 138-40 (5th Cir. 1978). Whether a patent is invalid for a public use or sale is a question of law. *Intel Corp. v. Int'l Trade Comm'n*, 946 F.2d 821, 829 (Fed. Cir. 1991). A conclusion that a § 102(b) bar invalidates a patent must be

10

based on clear and convincing evidence. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549 (Fed. Cir. 1990). One of the well recognized underlying policies for the public use and on-sale bars is to discourage "the removal of inventions from the public domain which the public justifiably comes to believe are freely available." *Id.* at 549.

### 1. Displays of Budge's Prototype by Budge to Various Dealers and by Dealers to Their Customers are Invalidating Public Uses

Public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996) (*citing In re Smith*, 714 F.2d 1127, 1134 (Fed. Cir. 1983)). While the absence of a confidentiality agreement is not determinative of the public use issue, it is a heavily weighed factor to be considered along with the time, place, and circumstances of the use which show the amount of control the inventor retained over the invention. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1265 (Fed. Cir. 1986); *see also Egbert v. Lippmann*, 104 U.S. 333, 336 (1881) (public use found where inventor allowed another to use inventive corset insert, though hidden from view during use, because he did not impose an obligation of secrecy or restrictions on its use). As noted in the Budge Declaration, there were no agreements requiring the commercial dealers to whom Budge disclosed his prototype to keep the invention secret. Indeed, Dixie Automotive took the prototype and displayed it at the Country Christmas Western Gift Expo held during the National Finals Rodeo in December 2000 in Las Vegas, Nevada. Brian and Larry Musgrave of Dixie Automotive showed the lock to attendees at the Country Christmas Expo and reported the comments back to Mr. Budge.

When the inventor or someone connected to the inventor puts the invention on display or sells it, there is a "public use" within the meaning of 35 U.S.C. 102(b) even though by its very

11

nature an invention is completely hidden from view as part of a larger machine or article, if the invention is otherwise used in its natural and intended way and the larger machine or article is accessible to the public. *In re Blaisdell*, 242 F.2d 779, 783, 113 USPQ 289, 292 (CCPA 1957); *Hall v. Macneale*, 107 U.S. 90, 96-97 (1882); *Ex parte Kuklo*, 25 USPQ2d 1387, 1390 (Bd. Pat. App. & Inter. 1992) (Display of equipment including the structural features of the claimed invention to visitors of laboratory is public use even though public did not see inner workings of device. The person to whom the invention is publicly disclosed need not understand the significance and technical complexities of the invention.). Therefore, the public displays of Mr. Budge's prototype lock by TJ's Rentals and Dixie Automotive in their shops and at the Country Christmas Expo are deemed to disclose the mechanical inner workings of the lock even if they were not visible by the display.

The fact that Mr. Budge had only a few samples or prototypes does not limit the "public" nature of his use in late 2000 and early 2001.  "[T]o constitute the public use of an invention it is not necessary that more than one of the patent articles should be publicly used. The use of a great number may tend to strengthen the proof, but one well defined case of such use is just as effectual to annul the patent as many."  Similarly, it is not necessary that more than one person use the invention. *Egbert v. Lippmann*, *supra*, 104 U.S. at  336.   Therefore, the public displays of Mr. Budge's prototype locks to approximately six different dealers, the public display of the prototype in TJ's Rentals and in Dixie Automotive, and the public display of the prototype at the Country Christmas Expo in December 2000 each independently provide a basis for invalidating the claims of the '686 patent under § 102(b), and summary judgment should be awarded to Diversi-Tech.

12

### 2.     The Displays of Mr. Budge's Prototype Were Not Experimental Uses

There exists an exception to the invalidating nature of public uses under § 102(b). If the use or sale was "experimental," there is no bar to patentability. A use is experimental for purposes of § 102(b) if it represents a *bona fide* effort to perfect the invention or to ascertain whether it will work for its intended purpose. *LaBounty Mfg. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1071 (Fed. Cir. 1992); *see also Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1581 (Fed. Cir. 1984).

Market testing, however, is not experimental use. Experimentation to determine product acceptance, i.e., market testing, is typical of a trader's and not an inventor's experiment and is thus not within the area of permitted experimental activity. *Smith & Davis Mfg. Co. v. Mellon*, 58 F. 705, 707 (8th Cir. 1893). "The experimental use exception does not include market testing where the inventor is attempting to gauge consumer demand for his claimed invention. The purpose of such activities is commercial exploitation and not experimentation." *In re Smith*, 714 F.2d 1127, 1134 (Fed. Cir. 1983). Likewise, testing of an invention for the benefit of appeasing a customer, or to conduct "minor 'tune up' procedures not requiring an inventor's skills, but rather the skills of a competent technician," are also not within the exception. *In re Theis*, 610 F.2d 786, 793, 204 USPQ 188, 193-94 (CCPA 1979). Principal examples of commercial

exploitation include display of samples to prospective customers[1] and demonstrating models or prototypes[2], especially at trade conventions and even though no orders are actually obtained[3].

The action taken by Mr. Budge in showing his prototype lock to more than half a dozen commercial dealers in trailer accessories to gauge acceptance and demand for his invention is indicative of commercial exploitation and not experimental use.  Furthermore, Mr. Budge removed himself completely from any testing role during the times that he provided samples or prototypes to TJ's Rentals and Dixie Automotive by allowing them to keep and display to samples to gauge consumer interest.  Mr. Budge was even more removed when Dixie Automotive took the prototype and displayed it at a major trade show in a different state.  This lack of control over the public displays by TJ's Rentals and Dixie Automotive, together with a complete absence of any agreement limiting the dealers' uses or requiring them to keep the invention secret, refute any contention that the displays of Mr. Budge's prototypes from approximately August 2000 through April 2001 were mere experimental uses.  To the contrary, as established by the above referenced authorities, Mr. Budge's displays to commercial dealers and the dealers' displays in their shops and at a trade show were all "public uses" under § 102(b) as a matter of law.  Therefore, summary judgment declaring the claims of the '686 patent invalid under §102(b) is also appropriate.

---

[1] *Cataphote Corp. v. DeSoto Chemical Coatings, Inc.,* 356 F.2d 24, 27, 148 USPQ 527, 529 (9th Cir. 1966) *mod. on other grounds*, 358 F.2d 732, 149 USPQ 159 (9th Cir.), *cert. denied*, 385 U.S. 832 (1966); *Chicopee Mfg. Corp. v. Columbus Fiber Mills Co.,* 165 F.Supp. 307, 323-325, 118 USPQ 53, 65-67 (M.D. Ga. 1958).

[2] *General Elec. Co. v. United States*, 206 USPQ 260, 266-67 (Ct. Cl. 1979); *Red Cross Mfg. v. Toro Sales Co.*, 525 F.2d 1135, 1140, 188 USPQ 241, 244-45 (7th Cir. 1975); *Philco Corp. v. Admiral Corp.*, 199 F. Supp. 797, 815-16, 131 USPQ 413, 429-30 (D. Del. 1961).

[3] *InterRoyal Corp. v. Simmons Co.*, 204 USPQ 562, 563-65 (S.D. N.Y. 1979), *see also Monogram Mfg. v. F. & H. Mfg.*, 144 F.2d 412, 62 USPQ 409, 412 (9th Cir. 1944)

### C. Diversi-Tech Reserves the Right to Argue Obviousness as an Additional Basis of Invalidity

Diversi-Tech contends that Mr. Budge's prototype includes all of the limitations of the claims of the '686 patent (*see* appended claim chart) and consequently invalidates those claims under various subsections of 35 U.S.C. §102. As noted above, the prior art reference need not be identical to the claimed invention, but still anticipates the claims if it incorporates an obvious variant thereof. *LaBounty Mfg.*, *supra*, 958 F.2d at 1071. However, in the event that Plaintiff attempts to identify a significant or nonobvious difference between Mr. Budge's prototype and the claims of the '686 patent, Diversi-Tech has supplied prior art references that disclose many of the individual and combinations of elements in analogous arts pertaining to other locks and security devices. *See* Muldoon Declaration Exhibits G-O.

Obviousness is a legal conclusion based on the factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966), including the scope and content of the prior art; the differences between the claims and the prior art; and the level of ordinary skill in the pertinent art. Diversi-Tech contends that the subject matter of the '686 patent is a simple mechanical device in a crowded field related to locks and security devices, including trailer coupler locks. The level of ordinary skill in the art of locks and security devices, including trailer coupler locks is a person with at least three years of experience in mechanical design.

In addition to the prototype of Budge's first lock design, the individual elements and claimed features of the '686 patent are well known in the prior art which includes:

- Locks utilizing adjustable U-shaped shackles and bases. *See, e.g.*, U.S. Patent Nos. 1,380,720; 4,773,239 and 5,438,854 (Muldoon Decl. Exs. G, K and N).

- Shackles incorporating inclined grooves engaging with a locking pin. *See, e.g.*, 5,921,115 and 5,277,042 (Muldoon Decl. Exs. O and L).

- Trailer coupler locks using ball shaped plugs. *See, e.g.*, U.S. Patent Nos. 3,605,457; 4,141,569 and 5,433,468 (Muldoon Decl. Exs. I, J and M).

- Trailer coupler locks using integral keyed locking mechanisms. *See, e.g.*, U.S. Patent Nos. 3,526,110; 3,605,457 and 4,141,569 (Muldoon Decl. Exs. H, I and J).

While Diversi-Tech contends that there are no significant differences between Mr. Budge's prototype and the claims of the '686 patent, should Plaintiff identify one of these features as absent from Mr. Budge's prototype, Diversi-Tech reserves the right to combine any one of these prior art references with the prototype in a manner that would render the claims of the '686 patent invalid as obvious under 35 U.S.C. § 103.

## CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment that Plaintiff's U.S. Patent No. 6,722,686 is invalid under 35 U.S.C. § 102(a) and (b) because the subject matter of the asserted claims was publicly known in this country prior to plaintiff's invention thereof; and publicly used in this country more than one year prior to the '686 patent's filing date.

Dated: June 7, 2005                               Respectfully Submitted,

WALL MARJAMA & BILINSKI LLP

By:   *s/James R. Muldoon*
            James R. Muldoon
            (Bar Roll No. 506772)
Office and P.O. Address
101 South Salina Street, Suite 400
Syracuse, New York 13202
Tel: (315) 425-9000
Fax: (315) 425-9114

*Attorneys for Defendant
   Diversi-Tech Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2005, I electronically filed the Memorandum of Law in Support of Defendant's Motion for Summary Judgment of Invalidity with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

> Edward R. Conan, Esq.
> Bond, Schoeneck & King, PLLC
> One Lincoln Center
> Syracuse, NY  13202
> econan@bsk.com

*s/James R. Muldoon*