UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

CEQUENT TRAILER PRODUCTS, INC.,

                    Plaintiff,

      v.

DIVERSI-TECH CORP.,

                 Defendant.

-------------------------------------------------------------

**OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Civil Action No.:  05-CV-0074 (NAM/GJD)

Plaintiff Cequent Trailer Products, Inc., ("Cequent") submits this opposition to defendant Diversi-Tech Corporation's ("Diversi-Tech") Statement of Undisputed Material Facts. (Dkt. No. 15).

1.      Plaintiff's Complaint alleges that Defendant infringes unspecified claims of U.S. Patent 6,722,686 ("the '686 patent"). Complaint ¶¶ 1, 10.

*Cequent's Response:* Cequent admits that Diversi-Tech infringes at least one claim of the '686 patent.

2.      According to the information stated on the first page of the '686 patent, Patent Application Serial No. 10/136,044 was filed on May 1, 2002. Muldoon Decl. Ex. E.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations in paragraph 2 to the extent the factual support for paragraph 2 is based on attorney Muldoon's declaration in violation of L.R. 7.1(a)(3) ("The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. *It does not, however, include attorney's affidavits.*"). Otherwise, Cequent admits that the filing date for the '686 patent is May 1, 2002.

3.      On August 28, 2000, Paul Budge, Manager of Diversi-Tech, had a notary public in the State of Utah, Diane McDaniel, sign and notarize one of his drawings depicting the prototype of his invention of a trailer coupler lock. A copy of the notarized drawing is attached to the Budge Declaration as Exhibit A, and a copy of the notary public's log of notarizations for the period including August 28 [sic] 2000, is attached to the Budge Declaration as Exhibit B. Budge Decl. ¶¶ 7-8.

*Cequent's Response:* Cequent denies Diversi-Tech's allegations in paragraph 3 for at least the following reasons:

- Public notary Diane McDaniel testified that she notarized Paul Budge's signature on a document back on August 28, 2000 but does not recall the particulars of that document. (McDaniel Dep. 27:3-12.)

- Ms. McDaniel testified that she could not tell from her notary log or personally remember whether she notarized other documents for Mr. Budge on August 28, 2000, which she admits could occurred because at least one page appears to be missing from the August 28 document. (McDaniel Dep. 23:3-24.)

- A copy of the August 28 document attached to Mr. Budge's declaration that Ms. McDaniel purportedly verified on April 19, 2005, shows a staple on the top left corner. (Budge Dec., Exh. A.) However, at Mr. Budge's deposition on August 11, 2005, Mr. Budge produced the purported original of the August 28 document, which did ***not*** have a staple at the top left corner, but rather a small hole indicating that the staple and any documents to it have been removed. (Budge Dep. 127:23-128:3.)

- Mr. Budge does not recall what other documents were attached to the document he alleges were notarized on August 28, 2000, but believes that there was at least some sort of cover page. (Budge Dep. 131:7-13.)

4.     After Plaintiff sued Diversi-Tech in this action, on April 19, 2005, Budge went back to the [sic] Ms. McDaniel, who notarized his original drawing and asked her to confirm that she had notarized the drawing on August 28, 2000. That is when she wrote the words "4-19-05 [dated] I did in fact notarize this originally on 8-29-00 [signed] Diane McDaniel" on a copy of the drawing. Budge Decl. ¶ 8.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations in paragraph 4

for the reasons set forth in Cequent's response to paragraph 3. Whether or not Mr. Budge went

back to Ms. McDaniel on April 19, 2005 to verify her notary is not material to whether Mr.

Budge publicly used a prototype to invalidate one or more claims of the '686 patent.


5.     In the summer and fall of 2000, Budge built several versions of a prototype of his first lock design. Budge Decl. ¶ 9.

*Cequent's Response:* Cequent denies paragraph 5 because the record evidence shows

that Mr. Budge did not reduce to practice his first lock design until after June 1, 2002, as follows:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22 – 19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4.)

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4;

September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

6.      On numerous occasions starting in approximately August 2000 and continuing through at least April 2001 (12 months prior to the filing date of the '686 patent application), Budge showed prototypes of his lock design to numerous local dealers in St. George and in the Greater Salt Lake City region for them to show to their customers and to provide back to him input on his design. Budge Decl. ¶¶ 10-13.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations set forth in paragraph 6. Mr. Budge did not even manufacture a working prototype until after June 1, 2002, and therefore could not have shown his prototype until after that date:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Mr. Budge only went to Salt Lake City once to *test* not *show* the coupler lock prototype. (Budge Dep. 56:14-58:3.) Mr. Budge only "indirectly showed" the alleged prototype to the Salt Lake City dealers (Petersen Marine, Big Bubba's Trailer, TJ's Trailers in Ogden, and Wasatch Trailers in Layton) when he was testing his coupler lock prototype. (*Id.* at 57:25-58:23.)


7.     A photograph of one of Budge's early prototypes of his lock design built between the summer and fall of 2000 and of the type that Budge showed to local dealers is attached to the Budge declaration as **Exhibit C**. Budge Decl. ¶ 10.

*Cequent's Response:* Cequent denies Diversi-Tech's factual statement asserted in paragraph 7 for at least the following reasons:

- Exhibit C of the Budge Declaration shows a prototype bearing the "DT" logo. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark

Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601");
Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Mr. Budge only went to Salt Lake City once to *test* not *show* the coupler lock prototype. (Budge Dep. 56:14-58:3.) Mr. Budge only "indirectly showed" the alleged prototype to the Salt Lake City dealers (Petersen Marine, Big Bubba's

Trailer, TJ's Trailers in Ogden, and Wasatch Trailers in Layton) when he was testing his coupler lock prototype. (*Id.* at 57:25-58:23.)

8.     The dealers that Budge showed the prototype of his first coupler lock design included TJ's Rentals and U-HAUL, in St. George; Dixie Automotive and Trailer Sales, in St. George; Petersen Marine, in Ogden, UT; Big Bubba's Trailers, in Ogden; T.J's Trailers in Ogden, and Wasatch Trailers in Layton, UT. Budge Decl. ¶ 11.

*Cequent's Response:* Cequent denies Diversi-Tech's factual statement asserted in paragraph 8 for at least the following reasons:

- Mr. Budge only went to Salt Lake City once to ***test*** not ***show*** the coupler lock prototype. (Budge Dep. 56:14-58:3.) Mr. Budge only "indirectly showed" the alleged prototype to the Salt Lake City dealers (Petersen Marine, Big Bubba's Trailer, TJ's Trailers in Ogden, and Wasatch Trailers in Layton) when he was testing his coupler lock prototype. (*Id.* at 57:25-58:23.)

- Exhibit C of the Budge Declaration shows a prototype bearing the "DT" logo. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4;

September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

9.    In addition to showing these dealers his prototype lock, Budge also gave samples of the prototype to TJ's Rental and U-HAUL, and Dixie Automotive for them to display in their stores in St. George and show to their customers. Budge Decl. ¶ 12; Jon Rimer Decl. ¶¶ 2-5; James Rimer Decl. ¶¶ 2-5; Brian Musgrave Decl. ¶¶ 2-6; and Larry Musgrave Decl. ¶¶ 2-6.

*Cequent's Response:* Cequent denies paragraph 9 to the extent that any of these activities occurred prior to June 1, 2002 for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S.

Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Mr. Budge only manufactured two prototypes in 2000 or 2001. Budge Dep. 60:22 – 61:5. Mr. Budge has one in his possession to this day but lost the other one in 2000. *Id.* at 62:2-5. Contradicting this, TJ's Rentals displayed and sold "three or four prototypes." James Rimer Dep. 21:20-25. Also contradicting this, Dixie Autmotive gave away "two or three" prototypes. Larry Musgrave Dep. 62:17-20, 63:22- 64:25.

- Mr. Budge only went to Salt Lake City once to *test* not *show* the coupler lock prototype. (Budge Dep. 56:14-58:3.) Mr. Budge only "indirectly showed" the alleged prototype to the Salt Lake City dealers (Petersen Marine, Big Bubba's Trailer, TJ's Trailers in Ogden, and Wasatch Trailers in Layton) when he was testing his coupler lock prototype. (*Id.* at 57:25-58:23.)

10.     The prototype lock that TJ's Rentals and U-HAUL displayed had a U-shaped shackle, the ends of which fit into holes in the lock base. Only one leg of the shackle had serrations that were used to adjust the height of and lock the shackle. The lock had a built in key mechanism in the base. Jon Rimer Decl. ¶ 3; James Rimer Decl. ¶ 3; Brian Musgrave Decl. ¶¶ 3-4; Larry Musgrave Decl. ¶¶ 3-4.

***Cequent's Response:*** Cequent denies Diversi-Tech's factual allegations paragraph 10 to the extent that they occurred prior to June 1, 2002, as follows:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4;

September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3;
Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display
  with the "DT" trademark on it, which means that TJ's Rentals did not display
  these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S.
  Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE:
  20020601"); Budge Dep. 155:16-156:3.)

11.     The prototype lock that was displayed by TJ's Rentals and U-HAUL in 2000
looked substantially the same as the lock depicted in the drawing notarized on August 28, 2000,
a copy of which attached to the Rimer and Budge Declarations as Exhibit A. Jon Rimer Decl. ¶¶
4-5; James Rimer Decl. ¶¶ 4-5.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations in paragraph 11

for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter
  Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-
  Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT"
  trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not
  begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S.
  Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE:
  20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a
  security device – because it "failed miserably" when he tested them in 2002 and
  2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4;

September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Mr. Budge only manufactured two prototypes in 2000 or 2001. Budge Dep. 60:22 – 61:5. Mr. Budge has one in his possession to this day but lost the other one in 2000. *Id.* at 62:2-5. Contradicting this, TJ's Rentals displayed and sold "three or four prototypes." James Rimer Dep. 21:20-25. Also contradicting this, Dixie Autmotive gave away "two or three" prototypes. Larry Musgrave Dep. 62:17-20, 63:22- 64:25.

- James Rimer never saw the August 28, 2000 document attached as Exhibit A of his declaration until April 2005. (James Rimer Dep. 24:21-25:7.)

- Jon Rimer does not have any documentary information in his possession, custody or control pertaining to TJ's Rentals, as he left TJ's Rentals earlier this year to move to North Carolina and left all responsive documents at TJ's Rentals. (James Rimer Dep. 28:5-28:12.)

- James Rimer is more knowledgeable about this matter than Jon Rimer because James Rimer handled all office matters while Jon Rimer handled "shop" matters. (James Rimer Dep. p. 36:2-36:8.)

12. The display of Budge's lock generated a lot of customer interest at TJ's Rental and U-HAUL. Jon Rimer Decl. ¶ 4; James Rimer Decl. ¶ 4.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations in paragraph 12, for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- James Rimer never saw the August 28, 2000 document attached as Exhibit A of his declaration until April 2005. (James Rimer Dep. 24:21-25:7.)

- Jon Rimer does not have any documentary information in his possession, custody or control pertaining to TJ's Rentals, as he left TJ's Rentals earlier this year to move to North Carolina and left all responsive documents at TJ's Rentals. (James Rimer Dep. 28:5-28:12.)

- James Rimer is more knowledgeable about this matter than Jon Rimer because James Rimer handled all office matters while Jon Rimer handled "shop" matters. (James Rimer Dep. p. 36:2-36:8.)

- Mr. Budge only manufactured two prototypes in 2000 or 2001. Budge Dep. 60:22 – 61:5. Mr. Budge has one in his possession to this day but lost the other one in 2000. *Id.* at 62:2-5. Contradicting this, TJ's Rentals displayed and sold "three or four prototypes." James Rimer Dep. 21:20-25. Also contradicting this, Dixie Autmotive gave away "two or three" prototypes. Larry Musgrave Dep. 62:17-20, 63:22- 64:25.

13. The prototype lock that Dixie Automotive displayed in its store had a U-shaped shackle, the ends of which fit into holes in the lock base. One leg of the shackle had serrations that were used to adjust the height of and lock the shackle. The lock had a built in key mechanism in the base. Brian Musgrave Decl. ¶¶ 4-6; Larry Musgrave Decl. ¶¶ 4-6.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations in paragraph 13 for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not

begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Brian Musgrave was in the "Washington County jail, playing with drugs" during the time of the Las Vegas Christmas Country Expo in 2000. (Larry Musgrave Dep. 26:4-25.) Therefore, Brian Musgrave did not attend the Country Christmas Expo until after he was bailed out of jail at the "tail end of the show." (Larry Musgrave Dep. 9:14-15; 26:9-10.)

- Mr. Budge only manufactured two prototypes in 2000 or 2001. Budge Dep. 60:22 – 61:5. Mr. Budge has one in his possession to this day but lost the other one in 2000. *Id.* at 62:2-5. Contradicting this, TJ's Rentals displayed and sold "three or four prototypes." James Rimer Dep. 21:20-25. Also contradicting this, Dixie

Autmotive gave away "two or three" prototypes. Larry Musgrave Dep. 62:17-20, 63:22- 64:25.

14.   Budge's lock that was displayed in Dixie Automotive during late 2000 and early 2001 looks substantially the same as the lock depicted in the drawing notarized on August 28, 2000, a copy of which attached to the Musgrave and Budge Declarations as Exhibit A. Brian Musgrave Decl. ¶¶ 4-6; Larry Musgrave Decl. ¶¶ 4-6.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations in paragraph 14 for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark

Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601");
Budge Dep. 155:16-156:3.)

- Mr. Budge only manufactured two prototypes in 2000 and 2001 and that one of those two prototypes is still in his possession. (Budge Dep. 59:21-60:5.) Therefore, Dixie Automotive could not have given away "two or three" prototypes to customers around May 2001. (Larry Musgrave Dep. 62:17-20; 63:22-64:25.)

- Brian Musgrave was in the "Washington County jail, playing with drugs" during the time of the Las Vegas Christmas Country Expo in 2000. (Larry Musgrave Dep. 26:4-25.) Therefore, Brian Musgrave did not attend the Country Christmas Expo until after he was bailed out of jail at the "tail end of the show." (Larry Musgrave Dep. 9:14-15; 26:9-10.)

- Mr. Budge only manufactured two prototypes in 2000 or 2001. Budge Dep. 60:22 – 61:5. Mr. Budge has one in his possession to this day but lost the other one in 2000. *Id.* at 62:2-5. Contradicting this, TJ's Rentals displayed and sold "three or four prototypes." James Rimer Dep. 21:20-25. Also contradicting this, Dixie Autmotive gave away "two or three" prototypes. Larry Musgrave Dep. 62:17-20, 63:22- 64:25.

15.    Brian and Larry Musgrave of Dixie Automotive displayed Budge's prototype lock at the annual Country Christmas Western Gift Expo held during the National Finals Rodeo in December 2000 in Las Vegas, Nevada. Brian Musgrave Decl. ¶ 3; Larry Musgrave Decl. ¶ 3; Budge Decl. ¶ 12.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations in paragraph 15 for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Brian Musgrave was in the "Washington County jail, playing with drugs" during the time of the Las Vegas Christmas Country Expo in 2000. (Larry Musgrave Dep. 26:4-25.) Therefore, Brian Musgrave did not attend the Country Christmas Expo until after he was bailed out of jail at the "tail end of the show." (Larry Musgrave Dep. 9:14-15; 26:9-10.)

- Mr. Budge only manufactured two prototypes in 2000 or 2001. Budge Dep. 60:22 – 61:5. Mr. Budge has one in his possession to this day but lost the other one in 2000. *Id.* at 62:2-5. Contradicting this, TJ's Rentals displayed and sold "three or four prototypes." James Rimer Dep. 21:20-25. Also contradicting this, Dixie Autmotive gave away "two or three" prototypes. Larry Musgrave Dep. 62:17-20, 63:22- 64:25.

16.     After the Expo and Rodeo, Budge picked up his prototype from Dixie Automotive and the Musgraves provided Budge with input from the people they showed the lock to at the Expo. Budge Decl. ¶ 12.

***Cequent's Response:*** Cequent denies Diversi-Tech's factual allegations in paragraph 16 for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4;

September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Brian Musgrave was in the "Washington County jail, playing with drugs" during the time of the Las Vegas Christmas Country Expo in 2000. (Larry Musgrave Dep. 26:4-25.) Therefore, Brian Musgrave did not attend the Country Christmas Expo until after he was bailed out of jail at the "tail end of the show." (Larry Musgrave Dep. 9:14-15; 26:9-10.)

- Mr. Budge only manufactured two prototypes in 2000 or 2001. Budge Dep. 60:22 – 61:5. Mr. Budge has one in his possession to this day but lost the other one in 2000. *Id.* at 62:2-5. Contradicting this, TJ's Rentals displayed and sold "three or four prototypes." James Rimer Dep. 21:20-25. Also contradicting this, Dixie Autmotive gave away "two or three" prototypes. Larry Musgrave Dep. 62:17-20, 63:22- 64:25.

17.     Budge did not have any of the dealers he showed his prototype to or who displayed his prototype in their stores and at the Expo sign any type of agreement with respect to these products, including expressly any type of confidentiality agreement to keep the prototypes or designs secret. Budge Decl. ¶ 13.

**Cequent's Response:** Cequent denies Diversi-Tech's factual allegations in paragraph 16 for at least the following reasons:

- There could not have been any confidentiality agreements between Mr. Budge and any dealers relating to the prototype lock in 2000 did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark

Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601");
Budge Dep. 155:16-156:3.)

- Mr. Budge only went to Salt Lake City once to *test* not *show* the coupler lock
  prototype. (Budge Dep. 56:14-58:3.) Mr. Budge only "indirectly showed" the
  alleged prototype to the Salt Lake City dealers (Petersen Marine, Big Bubba's
  Trailer, TJ's Trailers in Ogden, and Wasatch Trailers in Layton) when he was
  testing his coupler lock prototype. (*Id.* at 57:25-58:23.)

18.    Budge does not have any personal or family relationship with any of the dealers to
whom he showed his prototype or those who displayed the prototype in their shops or at the
Country Christmas Expo. Budge Decl. ¶ 13.

**Cequent's Response:** Cequent denies Diversi-Tech's factual allegations in paragraph 18.

- Diversi-Tech has a business relationship with both Dixie Automotive and TJ's
  Rentals. Budge Dep. 147:14-19.

19.    Based on feedback from these dealers, in mid-2001, Budge refined his coupler
lock by (a) widening the body and shackle to fit several wide versions of trailer couplers, (b)
added a multi-step uni-ball that accommodated all ball socket sizes between 1 - 7/8" to 2 - 5/16"
and (c) added the security of a second locking slide to lock both legs of the shackle. Budge Decl.
¶ 20.

**Cequent's Response:** Cequent denies Diversi-Tech's factual allegations in paragraph 19

for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter
  Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-
  Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Mr. Budge only went to Salt Lake City once to *test* not *show* the coupler lock prototype. (Budge Dep. 56:14-58:3.) Mr. Budge only "indirectly showed" the alleged prototype to the Salt Lake City dealers (Petersen Marine, Big Bubba's

Trailer, TJ's Trailers in Ogden, and Wasatch Trailers in Layton) when he was testing his coupler lock prototype. (*Id.* at 57:25-58:23.)

20.     On August 10, 2001, Budge had another notary public and his patent attorney sign or witness a copy of a drawing of this refined design. A copy of this notarized drawing is attached to the Budge declaration as **Exhibit D**. Budge Decl. ¶ 20.

*Cequent's Response:* Cequent denies Diversi-Tech's factual allegations paragraph 20 for at least the following reasons:

- The factual allegations in paragraph 20 do not refute the fact that Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

- The only prototypes that TJ's Rentals showed to customers included a display with the "DT" trademark on it, which means that TJ's Rentals did not display

these prototypes until after June 1, 2002. (James Rimer Dep. 19:4-23; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Dixie Automotive only displayed prototypes that had the "DT" trademark on them, which means that Dixie Automotive could not have displayed them until after June 1, 2002. (Larry Musgrave Dep. 63:22-65:16; U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 155:16-156:3.)

- Mr. Budge only went to Salt Lake City once to *test* not *show* the coupler lock prototype. (Budge Dep. 56:14-58:3.) Mr. Budge only "indirectly showed" the alleged prototype to the Salt Lake City dealers (Petersen Marine, Big Bubba's Trailer, TJ's Trailers in Ogden, and Wasatch Trailers in Layton) when he was testing his coupler lock prototype. (*Id.* at 57:25-58:23.)

21.    The level of ordinary skill in the art of locks and security devices, including trailer coupler locks, is a person with at least three years of experience in mechanical design. Budge Decl. ¶ 2.

***Cequent's Response:*** Cequent denies Diversi-Tech's allegations in paragraph 21 to the extent the "level of ordinary skill in the art" is a question of law to be determined by the Court. Moreover, paragraph 2 of Mr. Budge's declaration does ***not*** support the factual allegation made in paragraph 21 because Mr. Budge merely testifies in his declaration that he has more than three years of mechanical design. (Budge Dec. ¶ 2.)

22.     The prior art related to locks and security devices, including trailer coupler locks, is a crowded art with numerous patents predating the filing date of the '686 patent of May 1, 2002. Muldoon Decl. ¶ 9.

*Cequent's Response:* Cequent denies Diversi-Tech's allegations in paragraph 22. The only citation supporting paragraph 22 is testimony from attorney Muldoon in his declaration, which violates L.R. 7.1(a)(3) ("The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. *It does not, however, include attorney's affidavits.*"). Diversi-Tech has presented no other support other than attorney Muldoon's declaration that trailer coupler locks "is a crowded art with numerous patents predating the filing date of the '686 patent of May 1, 2002."


23.     The prototype of Budge's first lock design is prior art to the '686 patent under 35 U.S.C. 102(a) and (b). Budge Decl., *passim*.

*Cequent's Response:* Cequent denies Diversi-Tech's allegations in paragraph 23 for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and

2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

24.     The prototype of Budge's first lock design has no significant differences from the claims of the '686 patent. Budge Decl. ¶¶ 14-19, Exhibits A and C.

**Cequent's Response:** Cequent denies Diversi-Tech's factual allegations in paragraph 24 because it presupposes the factual allegations in paragraph 23, *i.e.*, that Mr. Budge's original prototype is prior art. As such, Cequent denies the factual allegations in paragraph 24 for at least the following reasons:

- Mr. Budge did not begin building coupler lock prototypes until 2002. (Carpenter Dep., 16:5-15; 18:22-19:16; Budge Dec. ¶ 3; Budge Dep. 106:2-14; Diversi-Tech's Response to Cequent's Interrogatory No. 4).

- The only remaining original prototype in Mr. Budge's possession bears a "DT" trademark. (Budge Dec., Exh. C, photograph of prototype.) Mr. Budge did not begin using the "DT" or "Diversi-Tech" trademark until June 1, 2002. (U.S. Trademark Application Serial No. 78/504,813 ("FIRST USE IN COMMERCE: 20020601"); Budge Dep. 151:3-151:13, 155:16-156:3.)

- Mr. Budge's original prototype did not work for its intended purpose – to act as a security device – because it "failed miserably" when he tested them in 2002 and 2003. (October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Budge Dep. 171:5-15.)

25.     In addition to the prototype of Budge's first lock design, the prior art includes:

    a.   Locks utilizing adjustable U-shaped shackles and bases are well known in the art. *See, e.g.,* U.S. Patent Nos. 1,380,720; 4,773,239 and 5,438,854 (Muldoon Decl. Exs. G, K and N).

    b.   Shackles incorporating inclined grooves engaging with a locking pin well known in the art. *See, e.g.*, U.S. Patent Nos. 5,921,115 and 5,277,042 (Muldoon Decl. Exs. O and L).

    c.   Trailer coupler locks using ball shaped plugs are well known in the art. *See, e.g.*, U.S. Patent Nos. 3,605,457; 4,141,569 and 5,433,468 (Muldoon Decl. Exs. I, J and M).

    d.   Trailer coupler locks using integral keyed locking mechanisms are well known in the art. *See, e.g.*, U.S. Patent Nos. 3,526,110; 3,605,457 and 4,141,569 (Muldoon Decl. Exs. H, I and J).

***Cequent's Response:*** Cequent denies Diversi-Tech's factual allegations in paragraph 25. The only supporting citation that the patents cited in paragraph 25 are "prior art" are "well known in the art" is attorney Muldoon's declaration, which violates L.R. L.R. 7.1(a)(3) ("The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. *It does not, however, include attorney's affidavits*."). Other than attorney Muldoon's declaration, Diversi-Tech did not cite to any other evidence on the record that any of the patents cited in paragraph 25 are "prior art," are "well known in the art" or how they are factually relevant to the present case.

Respectfully submitted,

Dated: August 31, 2005

_____/s/ David T. Movius_____
Michael L. Snyder (*pro hac vice*)
    *msnyder@mcdonaldhopkins.com*
David T. Movius (*pro hac vice*)
    *dmovius@mcdonaldhopkins.com*
David B. Cupar (*pro hac vice*)
    *dcupar@mcdonaldhopkins.com*
McDONALD HOPKINS CO., LPA
2100 Bank One Center
600 Superior Avenue, E.
Cleveland, Ohio 44114
Telephone: (216) 348-5400

Edward R. Conan (101387)
    *econan@bsk.com*
Maria P. Vitullo (511561)
    *mvitullo@bsk.com*
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

*Attorneys for plaintiff*
*Cequent Trailer Products, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 31, 2005, I electronically filed Plaintiff's Opposition to

Defendant's Statement of Undisputed Material Facts with the Clerk of the District Court using

the CM/ECF system, which sent notification of such filing to the following:

>   James R Muldoon, Esq.
>   Wall, Marjama & Bilinski, LLP
>   101 South Salina Street, Suite 400
>   Syracuse, NY 13202-1937

Dated: August 31, 2005                          _____/s/Edward R. Conan_____
                                                Edward R. Conan