# Exhibit 2

# FEHR LAW FIRM

Suite 300
Goldenwest Corporate Center
5025 Adams Avenue
Ogden, Utah 84403

**Thompson E. Fehr**

Admitted in California,
Utah, and Wisconsin

**Registered Patent Attorney**

(801) 393-6292
Fax (801) 528-5055

e-mail tfehr@fehrlawfirm.com

### VIA E-mail REarp@mcdonaldhopkins.com

### Original Sent via Certified Mail Receipt No. 7001 0320 0003 0989 2565

September 21, 2004

Robert H. Earp, III, Esq.
McDONALD HOPKINS
2100 Bank One Center
600 Superior Avenue, E.
Cleveland, Ohio 44114

    Re:    Alleged Patent Infringement
              U. S. Patent no. 6,722,686
              Coupler Locking Device and Method
              Your Client: Cequent Trailer Products, Inc.
              My Client: Diversi-Tech Corporation

Dear Mr. Earp:

      I represent Diversi-Tech Corporation and have been provided with your letter to them dated September 9, 2004.

      Diversi-Tech appreciates the concern of Cequent in protecting their intellectual property as well as your expressed desire amicably to handle the alleged infringement of the patent identified above.

      On behalf of Diversi-Tech I filed United States patent application no. 10/771,214 on February 2, 2004. In that application we discussed the patent application of your client which has subsequently become the patent in question.

      It is my understanding that the product being sold by Diversi-Tech is consistent with their patent application. Considering that and in accordance with your suggestion, I have reviewed the Cequent patent.

It is my opinion that the Diversi-Tech product does not infringe the Cequent patent.

The primary patentable distinction between the product and the patent involves the locking mechanism.

In the device claims the critical terminology is generally of the form "an integral locking means for lockingly engaging said locking bar within said aperture." Some of the claims do not use the term "means"; but I believe the most generous interpretation likely to be applied is that a lock, to be an element of an infringing product, must be the same as or equivalent to the lock which is described within the disclosure of the patent.

The lock of the Diversi-Tech product, as I understand it, is not substantially similar to that disclosed in the Cequent patent and does not function in the same way.

The lock of the Cequent patent is described in line 58 of column 3 through line 6 of column 4, lines 28 through 35 of column 4, and line 1 through line 24 of column 5:

> The locking mechanism of the preferred embodiment comprises a key mechanism 42, a spring 44, and a bolt 40 moveable between a locked position and an unlocked position. The key mechanism is housed within a locking sleeve 46 attached to the base 14. The key mechanism 42 is mounted within the bore of sleeve 46. As best shown in FIGS. 4 through 6, a locking bolt bore 48 extends through one sleeve 38 and into the base 14 to provide a channel in which a locking bolt 40 may move between a locked and unlocked position. The bore of locking sleeve 46 is in communication with the locking bolt bore 48 so that the key mechanism 42 can manipulate the bolt 40 between a locked and unlocked position. Located between the base of bore 48 and the locking bolt 40 is spring 44. The spring 44 is held within the bore 48 so that the spring 44 is compressed and spring loads the bolt 40 into the locked position.
>
> . . .
>
> Therefore, the rotational movement of the key mechanism 42 is translated into liner movement of the bolt 40 within the bolt bore to move against the spring and remove the bolt from its locked position. In doing so, the arm 22 is freely movable within the aperture 18 and can be removed therefrom. Upon removal of the appropriate key from the key mechanism 42, the bolt 40 is again forced into its locking position by the spring 44 as shown in FIGS. 4 and 5.
>
> . . .
>
> Due to the construction of the locking mechanism, the locking bar 12 can be adjusted downwardly into further locked engagement without the use of a key so that a snug fit is ensured. Although bolt 40 is moveable between a locked position, shown in FIGS. 4 and 5, and an unlocked position shown in FIG. 6, spring 44 continuously urges bolt 40 into the locked position. Only upon use of the appropriate key and rotation of tab 60 may the bolt 40 be moved to overcome the force of the spring and place the device in the unlocked position.

   In the locked position as shown in FIGS. 4 and 5, the slanted flange 54 and shoulder 56 of the bolt 40 are spring loaded to confront the camming surface 30 and groove shoulder 32 to lock the arm in place. Therefore, due to the construction of the bolt and grooves, the arm 22 is moveable downwardly through the aperture 18 but not removable therefrom when the device is in the locked position. Upon downward movement of the arm 22, the bolt 40 is forced to retract by the slanted flange 54 and permits further locking engagement of the arm 22 with respect to the bolt 40. When the device is in the locked position, arm 22 is prevented from being removed from the aperture 18 by the engagement between the bolt shoulder 56 and groove shoulder 32.

  Thus, the locking mechanism of the Cequent patent is a two-way lock. In a first position such locking mechanism allows the locking bar to be pushed farther downward but not withdrawn; in a second position such locking mechanism permits the locking bar either to be pushed farther downward or withdrawn.

  The Diversi-Tech product has a lock which is substantially different from the locking mechanism of the Cequent patent for at least two reasons.

  First, the Diversi-Tech lock is a three-way lock. In a first position, the locking bar can be pushed farther downward but not withdrawn; in a second position the locking bar can either be pushed farther downward or withdrawn; and in a third position the locking bar can neither be pushed farther downward nor withdrawn.

  The importance of this three-way lock can be understood from tests performed by Diversi-Tech. Substantially prior to the date the patent application of Cequent was filed, Diversi-Tech had conceived of a two-way lock with a bolt acting on only one leg of the locking bar and reduced this to practice by creating a working device. Testing significantly after reduction to practice, *i.e.*, in 2002, on this device and even later, *viz.*, in 2003, on the Cequent commercial model indicated that both models failed when struck only lightly with a hammer at a forty-five to ninety degree angle. The three-way lock of Diversi-Tech, which also simultaneously locks both legs of the locking bar, has not so failed.

  Second, the simultaneous locking of both legs further patentably distinguishes the Diversi-Tech lock from the claims of the Cequent patent.

  Although the Cequent patent provides "both arms may be locked in place relative to the base," no disclosure indicates that this would be done other than by using two of the locking mechanisms described in the Cequent patent.

  The method claims of the Cequent patent, furthermore, merely substantially state, "locking at least one said arm within at least one said aperture." This is logical to interpret only as using the sole means for locking that is described in the Cequent patent disclosure or an equivalent thereto.

Robert H. Earp, III, Esq.
McDONALD HOPKINS
September 21, 2004
Page 4 of 4

    Should you wish, I will be pleased to discuss this with you further.

                              Very truly yours,

                              Thompson E. Fehr

TEF/msg