UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

CEQUENT TRAILER PRODUCTS, INC.,

     Plaintiff,     Civil Action No.: 05-CV-0074
                (NAM/GJD)

  v.

DIVERSI-TECH CORP.,

     Defendant.

-------------------------------------------------------------


## MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Michael L. Snyder (*pro hac vice*)
 *msnyder@mcdonaldhopkins.com*
David T. Movius (*pro hac vice*)
 *dmovius@mcdonaldhopkins.com*
David B. Cupar (*pro hac vice*)
 *dcupar@mcdonaldhopkins.com*
McDONALD HOPKINS CO., LPA
2100 Bank One Center
600 Superior Avenue, E.
Cleveland, Ohio 44114
Telephone: (216) 348-5400

Edward R. Conan (101387)
 *econan@bsk.com*
Maria P. Vitullo (511561)
 *mvitullo@bsk.com*
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

*Attorneys for plaintiff*
*Cequent Trailer Products, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

MEMORANDUM IN OPPOSITION ............................................................................. 1

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF MATERIAL FACTS ............................................................. 3

    A.  The '686 Patent ............................................................................................... 3

    B.  Diversi-Tech's Infringing Coupler Lock ...................................................... 3

    C.  The Alleged Invention and Public Use Of The Prototype .............................. 3

II.     LAW AND ANALYSIS ....................................................................................... 5

    A.  Summary Judgment Standard And Diversi-Tech's Burden Of Proof .............. 5

    B.  Diversi-Tech Cannot Prove an Invalidating "Public Use" Because  The
        Prototype Was Not Reduced To Practice Until After June 1, 2002 .................. 7

        1.   The Prototype Was Reduced To Practice After  June 1, 2002
            Because It Bears The  "DT" Trademark ....................................... 8

        2.   The Owner Of C.E. Industries Testified That The Prototype Was
            Fabricated In 2002 .......................................................................... 9

        3.   Diversi-Tech's Correspondence Admits The Prototype  Had Not
            Been Reduced to Practice Until After June 1, 2002 ......................... 10

        4.   The August 28, 2000 Document  Is Not a Reduction to Practice or
            Public Use ....................................................................................... 11

    C.  Diversi-Tech's Motion Fails Because It Has No  Corroborating Evidence
        of Public Use Prior to May 1, 2002 ............................................................... 12

        1.   The Lack of Corroborating Evidence Is Fatal to  Diversi-Tech's
            Motion Because of Contradictory Witness Testimony ...................... 14

        2.   The Lack of Corroborating Evidence Is Fatal  to Diversi-Tech's
            Motion Because Diversi-Tech, TJ's  Rentals, And Dixie
            Automotive Have a Business Relationship....................................... 16

    D.  Diversi-Tech's Conclusory § 103 Invalidity Argument Fails ........................ 16

III.    CONCLUSION .................................................................................................. 18

CERTIFICATE OF SERVICE ..................................................................................... 19

<u>**MEMORANDUM IN OPPOSITION**</u>

Plaintiff Cequent Trailer Products, Inc. ("Cequent") submits this memorandum in opposition to the motion for summary judgment filed by defendant Diversi-Tech Corporation ("Diversi-Tech"). (Dkt. Nos. 14 & 22.)

## I.   <u>INTRODUCTION</u>

Cequent initiated this patent litigation against Diversi-Tech for infringement of U.S. Patent No. 6,722,686 ("the '686 patent"). (Dkt. No. 1.) Diversi-Tech filed the pending summary judgment motion the day before the Case Management Conference. (Dkt. Nos. 14 & 22.) Diversi-Tech alleges that its manager, Paul Budge, in 2000 and early 2001 publicly used an alleged prior invention that invalidates all of the claims of the '686 patent under either 35 U.S.C. §§ 102(a) or 102(b). Diversi-Tech also alleges that certain published documents combined with the alleged public use of that invention is invalidating under 35 U.S.C. § 103. (Dkt. No. 22.) The facts do not support these conclusions.

To prevail, Diversi-Tech must overcome the statutory presumption that the '686 patent is valid by proving (with corroboration) the alleged invalidity by clear and convincing evidence. 35 U.S.C. § 282. Diversi-Tech fails to meet its burden of proof for at least these reasons: (1) Mr. Budge did not reduce to practice his prototype invention until sometime after June 1, 2002 (if at all), which is after the application date for the '686 patent; (2) Diversi-Tech does not have any physical or documentary evidence to corroborate its testimonial evidence as required to prove invalidity; and (3) Diversi-Tech offers no authority or analysis to support its allegations of invalidity under § 103.

***First,*** Mr. Budge failed to reduce to practice – and therefore could not publicly use – his prototype until at least after <u>June 1, 2002</u>, which is more than one month *after* the <u>May 1, 2002</u> filing date of the '686 patent. Two of Diversi-Tech's declarants, James Rimer and Larry

Musgrave, testified that the allegedly-invalidating prototype was marked with the "DT" (for Diversi-Tech) trademark, which Diversi-Tech did not begin using in commerce until June 1, 2002. Moreover, Val Carpenter, the owner of the production facility used by Mr. Budge, testified that Mr. Budge did not build the allegedly-invalidating prototype until 2002. Finally, Mr. Budge's own writings explain that his initial prototype "failed miserably" during testing that occurred in 2002 or 2003. This evidence shows that Mr. Budge did not reduce to practice, let alone publicly use, his allegedly-invalidating prototype until at least sometime after June 1, 2002.

**Second,** Diversi-Tech's evidence is insufficient as a matter of law because it consists only of uncorroborated witness testimony. (Dkt. No. 15, ¶¶ 1-23.) More than a century of United States Supreme Court and Federal Circuit precedent requires Diversi-Tech to corroborate its witness testimony due to "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury." *The Barbed Wire Patent,* 143 U.S. 275, 284, 36 L.Ed. 154, 12 S.Ct. 443 (1891); *Finnigan Corp. v. USITC*, 180 F.3d 1354, 1366 (Fed. Cir. 1999) (same). Diversi-Tech's contradictory declaration and deposition testimony and its failure to provide corroborating physical or documentary evidence makes it impossible for Diversi-Tech to sustain its clear and convincing burden of proof.

**Third,** Diversi-Tech's mere citation of a list of patents and its bald statement that those references can be combined with Mr. Budge's alleged prior invention is not proof of invalidity under § 103 by any standard.

Given the foregoing, the record evidence precludes a finding of invalidity of the '686 patent, and Diversi-Tech's summary judgment motion should be denied.

## II.  STATEMENT OF MATERIAL FACTS

### A.  The '686 Patent

The patent application that issued as the '686 patent was filed on May 1, 2002. (Dkt. No. 1, Exh. A.) The '686 patent is directed to coupler locks used in the trailering industry for securing the couplers of unattended towed vehicles to prevent theft. (*Id.* at Figs. 1 & 2.) Cequent sells a product, the "Gorilla Guard Universal Coupler Lock," that falls within the claims of the '686 patent. (Exh. 1,[1] Gorilla Guard Lock Advertisement.)

### B.  Diversi-Tech's Infringing Coupler Lock

Following issuance of the '686 patent, Cequent learned that Diversi-Tech is selling a coupler lock that infringes at least one claim of the '686 patent. (Dkt. No. 1, Complaint.) Cequent demanded that Diversi-Tech cease and desist from any further infringing activities, but Diversi-Tech refused. (Exh. 2, September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3; Exh. 3, October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4.) Cequent then filed suit against Diversi-Tech for infringement of the '686 patent. (Dkt. No. 1.)

### C.  The Alleged Invention and Public Use Of The Prototype

Diversi-Tech filed its motion for summary judgment the day before the first Case Management Conference, asserting that the '686 patent is invalid due to Mr. Budge's prior invention and public use of an allegedly-invalidating prototype. (Dkt. No. 22.)

Diversi-Tech's motion is supported by five declarations: the declaration of Paul Budge (Dkt. No. 21), the identical declarations of James and Jon Rimer of TJ's Rentals and U-HAUL of St. George, Utah (Dkt. Nos. 18 and 19), and the identical declarations of Brian and Larry Musgrave of Dixie Automotive and Trailer Sales, also of St. George, Utah (Dkt. Nos. 17 and 20).

---

[1] Exhibits 1 through 10 cited in this brief are attached to the Declaration of David T. Movius, Esq., which is being filed herewith.

Cequent's discovery following Diversi-Tech's motion shows that the evidence presented by Diversi-Tech either has been taken out of context, is contradictory, or is wholly incorrect.

While Cequent is responding separately to Diversi-Tech's Statement of Material Facts (Dkt. No. 15), the following warrant particular attention for purposes of this response:

Mr. Budge claims to have conceived of the idea for the allegedly-invalidating prototype on or about August 28, 2000. (Dkt. No. 21, Budge Dec., Exh. A.) However, Mr. Budge had not built a fully-functioning prototype prior to June 1, 2002. For example, Mr. Budge did not begin working on a prototype of his claimed invention until sometime in 2002. (Exh. 4, Carpenter Dep. 16:5-15, 19:7-19:16.) When Mr. Budge tested his prototype in 2002 or 2003, it "failed miserably." (Exh. 3, October 27, 2004 letter from Paul Budge to Robert Earp, Esq. at 4; Exh. 2, September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq. at 3.) Moreover, Mr. Budge's original prototype bears the Diversi-Tech (or "DT") trademark, which Diversi-Tech did not use in commerce until at least June 1, 2002. (Dkt. No. 21, Budge Dec., Exh. C, photograph of prototype; Exh. 6, U.S. Trademark Serial No. 78/504813; Exh. 5, Budge Dep. 151:3-13, 155:16-156:3, 157:2-8.)

Mr. Budge's failure to produce a fully-functioning prototype before June 1, 2002 also establishes that neither Mr. Budge nor TJ's Rentals or Dixie Automotive could have publicly used an invalidating coupler lock until after the '686 patent filing date. (Exh. 7, James Rimer Dep. 19:4-23 (prototype displayed by TJ's Rentals included "DT" mark); Exh. 8, Larry Musgrave Dep. 63:22-65:16 (prototype displayed by Dixie Automotive included "DT" mark); Exh. 4, Carpenter Dep. 16:5-16:15, 19:7-19:16 (Mr. Budge did not begin manufacturing prototype until 2002).) TJ's Rentals and Dixie Automotive only displayed prototypes that included the DT mark.  (Exh. 7, James Rimer Dep., 19:4-19:23; Exh. 8, Larry Musgrave Dep.

64:20-64:25.) Therefore, their claimed public use also occurred after the June 1, 2002 filing date for the '686 patent. (Exh. 6, U.S. Trademark Serial No. 78/504813.)

Finally, Diversi-Tech does not provide any factual support for its allegation of invalidity pursuant to 35 U.S.C. § 103.

Simply put, Diversi-Tech cannot prove invalidity by clear and convincing evidence and many issues of material fact exist that preclude entry of summary judgment on Diversi-Tech's motion.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard And Diversi-Tech's Burden Of Proof

Summary judgment cannot be entered in favor of the moving party unless the record as a whole establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Diversi-Tech therefore bears the burden of demonstrating that is no genuine issue of material fact to be decided with respect to any essential element of its invalidity claims. *Anderson,* 477 U.S. at 250 n.4. As the non-moving party, any ambiguities must be resolved and all inferences must be drawn in favor of Cequent. *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir. 1998). If Diversi-Tech fails to meet its burden, its motion for summary judgment must be denied. *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002) (summary judgment inappropriate where record reveals evidence for a trier of fact to find in favor of non-moving party).

As Diversi-Tech acknowledges in its motion, the '686 patent is presumed valid as a matter of law. 35 U.S.C. § 282 ("A patent shall be presumed valid."). To overcome the statutory presumption of validity, Diversi-Tech must prove the invalidity of the '686 patent by clear and convincing evidence. *Elan Parms., Inc. v. Mayo Found.,* 346 F.3d 1051, 1055 (Fed. Cir. 2003);

*Allied Colloids Inc. v. American Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995). Moreover, because Diversi-Tech alleges that the '686 patent is invalid due to its own purported prior use, testimonial evidence alone is insufficient; to invalidate the presumptively valid '686 patent, Diversi-Tech must come forward with additional corroborating evidence of invalidity. *Finnigan Corp. v. USITC*, 180 F.3d 1354, 1366 (Fed. Cir. 1999) (the "law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony."). Whether Diversi-Tech can meet its burdens is question of fact. *See Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1458 (Fed. Cir. 1984).

If Diversi-Tech fails to both establish and corroborate clear and convincing factual evidence of invalidity, the presumption of validity of the '686 patent remains and the Court need not affirmatively declare the '686 patent valid. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir. 1987). In this respect, the burden of proving invalidity by clear and convincing evidence and the burden of going forward always remains on Diversi-Tech – it ***never*** shifts to Cequent.[2] *Innovative Scuba Concepts, Inc. v. Feder Indust., Inc.,* 26 F.3d 1112, 1115 (Fed. Cir. 1994) (finding reversible error for district court to require patent owner to prove that § 102 defense lacked merit). Instead, Cequent must come forward with affirmative evidence of validity only ***after*** (and in this case if) Diversi-Tech first presents clear and convincing evidence of invalidity. *Id.*; *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).

---

[2] Citing *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1576-77 (Fed. Cir. 1996), Diversi-Tech argues that the burden shifts to Cequent once Diversi-Tech has presented "prima facie evidence of patent invalidity." (Dkt. No. 22, motion at 9). Diversi-Tech is incorrect as a matter of law. In the *Mahurkar* case that Diversi-Tech cites, the Federal Circuit held that the challenging party "[bears] the burden of persuasion by clear and convincing evidence on all issues relating to the status of the … prior art." *Id.* at 1576. Diversi-Tech has not met the higher "clear and convincing" standard that could give rise to any burden of production by Cequent.

Diversi-Tech has failed establish undisputed and corroborated material facts that prove by clear and convincing evidence that the '686 patent is invalid. The Court should deny Diversi-Tech's motion for summary judgment and set this matter for discovery on Diversi-Tech's infringement of the '686 patent and Cequent's damages.

**B.     Diversi-Tech Cannot Prove an Invalidating "Public Use" Because
         The Prototype Was Not Reduced To Practice Until After June 1, 2002**

To prove an invalidating public use under either 35 U.S.C. §§ 102(a) or 102(b), Diversi-Tech must prove by clear and convincing evidence that it "***completed*** [an] invention … used in public, without restriction and in circumstances other than substantially for the purposes of experimentation." *Allied Colloids v. American Cyanamid Co.,* 64 F.3d 1570, 1574 (Fed. Cir. 1995) (citing *Smith & Griggs Mfg. Co. v. Sprague,* 123 U.S. 249, 256, 31 L. Ed. 141, 8 S. Ct. 122, 1887 Dec. Comm'r Pat. 616 (1887)) (emphasis added). Because Diversi-Tech must establish that it had a "completed invention," it must prove by clear and convincing evidence that it reduced to practice the allegedly-invalidating prototype prior to the critical dates under either 35 U.S.C. §§ 102(a) or 102(b). *EZ Dock v. Schafer Sys., Inc.,* 276 F.3d 1347, 1352 (Fed. Cir. 2002); *Cont'l Plastic v. Owens Brockway Plastic Products, Inc.*, 141 F.3d 1073, 1079 (Fed. Cir. 1998). If the record evidence shows that Diversi-Tech did not reduce to practice an actual working prototype until *after* the May 1, 2002 filing date of Cequent's '686 patent, then Diversi-Tech cannot prove invalidity under any subsection of § 102 as a matter of law. *Sandt Tech. Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (prior art device anticipates claimed invention under § 102 only if conceived *and* reduced to practice prior to filing date). Diversi-Tech has not – and can not – sustain its clear and convincing burden.

Actual reduction to practice of alleged prior art is established when the inventor proves both (1) an embodiment of the alleged invention that meets all the claim limitations of the

allegedly-invalid patent and (2) that the embodiment works for its intended purposes. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). *See Taskett v. Dentlinger,* 344 F.3 1337, 1340 (Fed. Cir. 2003) ("In order to establish an actual reduction to practice, the inventor must prove that ... the invention will work for its intended purpose."). "Determining whether an invention will work for its intended purpose may require testing, depending on the character of the invention and the problem it solves." *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002) (citing *Cooper*, 154 F.3d at 1327). Thus, there can be no reduction to practice until the invention has been both constructed and sufficiently tested. *Space Systems/Loral, Inc. v. Lockheed Martin Corp.,* 271 F.3d 1076, 1079 (Fed. Cir. 2001).

Diversi-Tech asserts that Paul Budge, its manager, manufactured two prototypes in the summer of 2000 at C.E. Industries. (Exh. 5, Budge Dep. 105:22-106:14; Dkt. No. 21, Budge Dec., ¶ 3; Exh. 9, Resp. to Cequent's Interrogatory No. 4.) Mr. Budge has testified that those two prototypes are the ***only*** prototypes that serve as the basis for the alleged invalidating public use. (Exh. 5, Budge Dep. 8:4-24; 9:13-11:2.) Mr. Budge testified that he lost one of the two prototypes in either 2000 or 2001 and that he still has one in his possession. (*Id.* at 62:2-62:5, 64:8-64:10.) However, other witness testimony and documentary evidence contradicts Mr. Budge's testimony, creating genuine issues of material fact.

### 1.    The Prototype Was Reduced To Practice After June 1, 2002 Because It Bears The  "DT" Trademark

The sole remaining prototype (of the two Mr. Budge allegedly produced) bears the "DT" trademark. (Dkt. No. 21, Budge Declaration, Exh. C, photograph of prototype; Exh. 5, Budge Dep. 157:2-8; Exh. 7, James Rimer Dep., 19:4-194:23; Exh. 8, Larry Musgrave Dep. 64:20-64:25.) Attempting to establish an early date for his prototype, Mr. Budge states in his declaration submitted in support of Diversi-Tech's motion that Diversi-Tech first began using

these marks in "early 2001." (Dkt. No. 21, Budge Dec. ¶ 4.) However, Mr. Budge at his deposition testified that Diversi-Tech did not begin using the "DT" mark until after June 1, 2002. (Exh. 5, Budge Dep. 151:3-13, 155:16-156:3.) Mr. Budge's deposition testimony is consistent with Diversi-Tech's federal trademark application for the "DT" mark, in which Angela Budge, Diversi-Tech's president and Mr. Budge's wife, swore under oath and subject to fine or imprisonment under 18 U.S.C. § 1001 that the "DT" mark first was not used in commerce until June 1, 2002. (Exh. 6, U.S. Trademark Serial No. 78/504813.)

Attempting to cure this inconsistency, Mr. Budge then testified that he only affixed the "DT" mark on the allegedly-invalidating prototype in 2002 or 2003. (Exh. 5, Budge Dep. 157:9-158:8.) However, representatives of both TJ's Rentals and Dixie Automotive testified that the prototypes they supposedly used publicly included the "DT" trademark. (Exh. 7, James Rimer Dep. 19:4-19:23; Exh. 8, Larry Musgrave Dep. 64:20-64:25.) Therefore, a genuine issue of material fact exists as to whether Mr. Budge actually reduced to practice and publicly used the allegedly-invalidating prototype in 2000, as it alleges in its summary judgment motion.

### 2. The Owner Of C.E. Industries Testified That The Prototype Was Fabricated In 2002

Diversi-Tech states that the allegedly-invalidating prototype was fabricated at C.E. Industries. (Dkt. No. 21, Budge Dec. ¶ 3; Exh. 5, Budge Dep. 106:2-106:14; Exh. 9, Diversi-Tech's Response to Cequent's Interrogatory No. 4.) Contradicting Diversi-Tech's claimed invention date, Val Carpenter, the owner of C.E. Industries, testified that Mr. Budge did not begin working on his prototype at C.E. Industries until 2002. (Exh. 4, Carpenter Dep. 16:5-15). Mr. Carpenter explained:

Q:     Do you recall which year, 2000 or 2002?

> A:      No I don't recall exactly. ***It had to be around 2002, because before that it was the metal stud business he was involved, and there wasn't any activity on this before that.***

(Exh. 4, Carpenter Dep. 19:7-19:16) (emphasis added).) Mr. Carpenter's testimony directly refutes Diversi-Tech's claim of invalidity under any section of 35 U.S.C. § 102 and constitutes an issue of material fact that precludes entry of summary judgment on Diversi-Tech's motion.

### 3.      Diversi-Tech's Correspondence Admits The Prototype Had Not Been Reduced to Practice Until After June 1, 2002

Beyond the testimony of Messrs. Carpenter, Rimer, and Musgrave, Diversi-Tech's claim that Mr. Budge reduced to practice two actual working prototypes in the summer of 2000 is belied by documentary evidence produced by Mr. Budge and his counsel.

In an October 27, 2004 letter, Paul Budge explained that, when tested, his original prototype "failed miserably," writing:

> The testing we performed on my original designs and the Cequent products we later tested, ***failed miserably … A locking device with a spring type bolt engagement [such as Budge's prototype] is not in my opinion classifiable as a fully functional security devise*** [sic, device] and in my opinion should have never been granted a valid U.S. patent, as a security product should show some sign of damage if a thief were to remove it…. ***In our initial product testing we used springs that were so stiff that it was almost impossible to turn the key. We then tested it, and with the first hammer blow the bolts bypassed the serrations on both of the shackle legs…. I haven't shared these findings*** with our distribution network and I probably never will as long as I am continuing to sell my product at a rate of ten to every one Fulton, Masterlock or Trimax sold in my distribution network.

(Exh. 3, October 27, 2004 letter from Paul Budge to Robert Earp, Esq., at 4 (emphasis added).) That "initial product testing" was done in 2002 and 2003, showing that the prototype was not reduced to practice as of then. (Exh. 5, Budge Dep. 171:12-171:13.)

Furthermore, Diversi-Tech prior counsel confirmed that Mr. Budge did not reduce his prototype to practice until at least 2002. (Exh. 2, September 21, 2004 letter from Thompson Fehr, Esq., to Robert Earp, Esq.) Diversi-Tech's counsel wrote:

> Substantially prior to the date the patent application of Cequent was filed, Diversi-Tech had conceived of a two-way lock with a bolt acting on only one leg of the locking bar and reduced this to practice by creating a working device. ***Testing significantly after reduction to practice, i.e., in 2002,*** on this device and even later, *viz.*, in 2003, on the Cequent commercial model indicated that both models ***failed when struck only lightly with a hammer*** at a forty-five to ninety degree angle.

(*Id.* at p. 3) (emphasis added). This testimony shows further that, as of at least 2002, Mr. Budge had not reduced his claimed invention to practice such that it worked for its intended purpose.

The September 21, 2004 and October 27, 2004 letters each prove Mr. Budge could not have reduced to practice, let alone have publicly used his prototypes prior to 2002. *See Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed. Cir. 1998) (there can be no reduction to practice unless purported inventor determined that the invention would work for "its intended purposes"). Diversi-Tech's motion for summary judgment therefore fails as a matter of law since it cannot prove by clear and convincing evidence an invention date (*i.e.,* date of reduction to practice) or an actual public use prior to the May 1, 2002 filing date of the '686 patent. *See id.; Sandt Tech,* 264 F.3d at 1350.

### 4.    The August 28, 2000 Document Is Not a Reduction to Practice or Public Use

For documentary "evidence," Diversi-Tech presents only a single document, purportedly notarized on August 28, 2000, that depicts a coupler lock. (Dkt. No. 21, Budge Dec., Exh. A.) The notarized document is not itself anticipatory and cannot invalidate the '686 patent under any subsection of 35 U.S.C. § 102 because it is ***not*** evidence of a reduction to practice, but rather only of mere conception. *See Goodrich v. Harmsen,* 442 F.2d 377, 379-80 (C.C.P.A. 1971.) Moreover, that document is not a reduction to practice or of public use because it is not a physical embodiment that can work for its intended purpose. *See Cooper,* 154 F.3d at 1327. Indeed, Diversi-Tech does not cite the August 28, 2000 document to support its claim of

reduction to practice and public use. (*See generally,* Dkt. No. 15, Diversi-Tech's Statement of Undisputed Facts; Dkt. No. 22, Motion.)

Diane McDaniel, the public notary who purportedly notarized the document, cannot testify as to the contents of the document. (Exh. 10, McDaniel Dep. 21:24 –23:5.) But, even if she could, that would not constitute an invalidating "public use." *See Schmierer v. Newtwon*, 1010, 1015 (C.C.P.A. 1968) (notarized document where notary did not understand contents of the document is nothing more than evidence regarding possible date of conception requiring further evidence of a working prototype for reduction to practice). Moreover, declarants James Rimer and Larry Musgrave each testified that they could not recall ever seeing the notarized document attached to their respective declarations prior to April 2005. (Exh. 7, James Rimer Dep. 24:21-25:4; Exh. 8, Larry Musgrave Dep. 79:7-20.) Therefore, Diversi-Tech's allegedly notarized document does not support its invalidity position.

### C.     Diversi-Tech's Motion Fails Because It Has No Corroborating Evidence of Public Use Prior to May 1, 2002

Diversi-Tech's motion for summary judgment also fails because it has no corroborating evidence to support the claimed reduction to practice and public used of the prototype. As a matter of law, corroboration is required to prove invalidity under any subsection of 35 U.S.C. § 102. *Finnigan*, 180 F.3d at 1367. Thus, mere testimony concerning public use is not sufficient to overcome the statutory presumption of validity. *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1373 (Fed. Cir. 1998) ("[W]itnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information."). The United States Supreme Court explained more than a century ago:

> As we have had occasion before to observe, oral testimony, unsupported by patents or exhibits, tending to show prior use of a device regularly patented, is, in

the nature of the case, open to grave suspicion. The *Barbed Wire Patent*, 143 U.S. 275, 36 L. Ed. 154, 12 S. Ct. 443[(1891)]. Granting the witnesses to be of the highest character, and never so conscientious in their desire to tell only the truth, the possibility of their being mistaken as to the exact device used, which, though bearing a general resemblance to the one patented, may differ from it in the very particular which makes it patentable, is such as to render oral testimony peculiarly untrustworthy; particularly so if the testimony be taken after the lapse of years from the time the alleged anticipating device was used. If there be added to this a personal bias, or an incentive to color the testimony in the interest of the party calling the witness, to say nothing of downright perjury, its value is, of course, still more seriously impaired.

*Deering v. Winona Harvester Works*, 155 U.S. 286, 300-01, 39 L. Ed. 153, 15 S. Ct. 118 (1894).

Absent corroboration, Diversi-Tech's motion must fail as a matter of law. *Id.; Finnigan*, 180 F.3d at 1368.

Other than contradictory deposition and declaration testimony regarding events that would have occurred more than five years ago, neither Diversi-Tech nor any of its witnesses produced or presented any corroborating evidence. Val Carpenter testified that C.E. Industries has "no documents that would pertain to anything to do with the development" of the allegedly-invalidating prototype (Exh. 4, Carpenter Dep., 5:16-5:24.) Similarly, James Rimer of TJ's Rentals testified that the company does not have any corroborating evidence. (Exh. 7, James Rimer Dep. 6:12-6:22.) Mr. Rimer also testified that his brother Jon Rimer, who also executed a declaration in support of Diversi-Tech's motion, does not have any corroborating evidence. (Exh. 7, James Rimer Dep. 28:1-28:12.) Finally, Larry Musgrave testified that Dixie's Automotive does not have any corroborating evidence. (Exh. 8, Larry Musgrave Dep. 5:9-19 ("I don't have any documents.").) Diversi-Tech thus has failed completely to provide any evidence to corporate its often-contradictory evidence of alleged prior invention and public use. Diversi-Tech's arguments of invalidity therefore fail as a matter of law and its motion should be denied.

      **1.**      **The Lack of Corroborating Evidence Is Fatal to**
                **Diversi-Tech's Motion Because of Contradictory Witness Testimony**

The contradictions in the deposition and declaration testimony of Diversi-Tech's witnesses highlights why United States Supreme Court and Federal Circuit precedent requires corroborating evidence. For example, Mr. Budge testified that he only manufactured two prototypes in 2000 and 2001, that he did not have enough components to build a third prototype. (Exh. 5, Budge Dep. 59:21-60:5.) Mr. Budge further testified that he knew of no offer for sale or actual sale of his prototype in 2000 or 2001. (*Id.* at 117:15-118:1.) Mr. Budge still has one of the prototypes, and one was lost in or around 2001. (Exh. 5, Budge Dep. 61:20-62:5.)

However, James Rimer testified that TJ's Rentals displayed "three or four prototypes" in the summer of 2000 and that they were <u>all</u> sold to customers. (Exh. 7, James Rimer Dep. 21:20-21:25.) Larry Musgrave further testified that Dixie Automotive gave away "two or three" prototypes to customers in or around May 2001. (Exh. 8, Larry Musgrave Dep. 62:17-20; 63:22-64:25.) Obviously, the math does not add up: Mr. Budge only made two prototypes, yet TJ's Rentals and Dixie Automotive somehow sold or gave away five to seven prototypes in the same time period while Mr. Budge still has one in his possession. There is no way their testimony can be accurate given Mr. Budge's admissions. Either way, neither Diversi-Tech nor any of the declarants could produce any corroborating evidence that could resolve these contradictions or meet Diversi-Tech's clear and convincing burden of proof.

Corroborating evidence further is necessary because Diversi-Tech's witnesses tried (but failed) to coordinate their deposition testimony. Specifically, Mr. Budge spoke with Larry Musgrave during the lunch hour of his deposition. (Exh. 5, Budge Dep. 143:24-144:10; 213:5-14.) On the very next day, however, Larry Musgrave flatly denied speaking to Mr. Budge. (Exh. 8, Larry Musgrave Dep. 28:17-25; 29:24-30:25.) If Mr. Musgrave cannot recall talking to Mr.

Budge the day before his deposition, it is difficult, if not impossible, to imagine how Mr. Musgrave could accurately recall specific facts about what supposedly occurred five years ago.

Mr. Budge and Mr. Musgrave's testimony also is inconsistent regarding how a prototype was displayed at a Las Vegas Country Christmas Expo in 2000. Mr. Budge testified that he purportedly left a prototype with Dixie Automotive, never got back to picking it up, and Dixie took the prototype to the Country Christmas Expo without Mr. Budge's knowledge:

> I remember picking it up, taking it over to Dixie and showing them, and they ended up keeping it for a while and wanted to show it off. I never got back to picking it back up. And they took it – I don't know this for a fact, but they told me they took it to an expo or a trade show, along with some other products that they wanted to show.

(Exh. 5, Budge Dep. 79:18-80:1.) That is not what Mr. Musgrave recalled. Mr. Musgrave testified that "Paul asked me if I would display it at the Country Christmas Expo. And I took it down. So we took it down." (Exh. 8, Larry Musgrave Dep. 12:22-12:25.) Mr. Musgrave also testified that "[a]nd the year 2000 Paul knew that I was going to the National Finals and asked me to get input on his coupler, which is Exhibit 4 right here." (*Id*. at 70:5-70:7.) Messrs. Budge's and Musgrave's inconsistent testimony again shows the importance of why courts have for over a century required corroborating evidence to support witness testimony.

Indeed, as soon as specific factual information is elicited, Diversi-Tech's declarants contradict one another. Thus, skepticism of the uncorroborated testimony offered by Diversi-Tech is warranted because it "is rare indeed that some physical record (*e.g.*, a written document such as notes, letters invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist." *Woodland,* 148 F.3d at 1373. Diversi-Tech's failure to provide any corroborative documentary or physical evidence, coupled with the contradictory testimony of Diversi-Tech's declarants, therefore precludes a finding of invalidity on Diversi-Tech's motion for summary judgment.

**2.    The Lack of Corroborating Evidence Is Fatal
to Diversi-Tech's Motion Because Diversi-Tech, TJ's
Rentals, And Dixie Automotive Have a Business Relationship**

That Diversi-Tech has a business relationship with both T.J's Rentals and with Dixie Automotive further diminishes the probative value of the declarations submitted in support of Diversi-Tech's motion. Arguing otherwise, Mr. Budge states in his declaration that he does not have any personal or family relationship with any of the dealers to whom he showed his prototype. (Dkt. No. 21, Budge Dec. ¶ 13.) However, Mr. Budge's declaration is less than candid because he omits the fact that Diversi-Tech has a business relationship with both TJ's Rentals and Dixie Automotive.[3] (Exh. 5, Budge Dep. 147:14-19.) That the five declarants in Diversi-Tech's motion own, have owned, or are employed by Diversi-Tech, Dixie Automotive, and TJ's Rentals, sheds a questionable light on the veracity of the declarations of Diversi-Tech's five declarants. *See Barbed Wire*, 143 U.S. at 284 ("witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information.").

For at least these reasons, the Court should deny Diversi-Tech's motion for summary judgment on invalidity under 35 U.S.C. § 103.

**D.    Diversi-Tech's Conclusory § 103 Invalidity Argument Fails**

Apparently concerned that its invalidity arguments under § 102 would be unsuccessful, Diversi-Tech raises – again without support – that Cequent's patent is invalid as obvious. (Dkt. No. 22, Motion at 15-16). Diversi-Tech's § 103 analysis is insufficient as a matter of law.

---

[3] Diversi-Tech incorrectly argues in its motion that weight should be given to the fact that Mr. Budge does not have a personal or familial relationship has no legal support as the Federal Circuit has made it clear that "the need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (*e.g.*, because that party is the accused infringer) or is uninterested by testifying on behalf of an interested party." *Finnigan*, 180 F.3d at 1367.

To prove invalidity under § 103, Diversi-Tech must establish clear and convincing evidence of the following:

> [1] what a prior art patent as a whole discloses; [2] what it in fact disclosed to workers in the art; [3] what differences exist between the entire prior art, or a whole prior art structure, and the whole claimed invention; [3] what the differences enabled the claimed subject matter as a whole to achieve, that others for years sought and failed to arrive at the claimed invention; [4] that one of those others copied it; [5] that the invention met on its merits with outstanding commercial success.

*Panduit*, 810 F.2d at 1565-1566. While raising the specter of invalidity under § 103, Diversi-Tech does not provide any shred of evidence or analysis on any of the five aforementioned factual issues, let alone bear its burden of proving them by clear and convincing evidence. Diversi-Tech's § 103 invalidity argument fails on this basis alone.

Diversi-Tech's § 103 invalidity argument also will fail unless it establishes by clear and convincing evidence that its claimed prior art satisfies one or more of the subsections of 35 U.S.C. § 102. *See* 35 U.S.C. § 103; *OddsOn Products, Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1401-2 (Fed. Cir. 1997). As set forth above, Diversi-Tech cannot meet this requirement because it has failed to establish clear and convincing evidence that Mr. Budge conceived and reduced to practice a coupler lock prior to May 1, 2002. Diversi-Tech therefore cannot rely on those activities as invalidating under § 103. *See id.*

Finally, Diversi-Tech's attempt to "reserve the right" to further argue invalidity under § 103 at some other undisclosed point in time should be rejected by the Court. Diversi-Tech already has had the opportunity to show how its list of patents cited on pages 15-16 of its motion invalidate one or more claims of the '686 patent under § 103, and it did not. Thus, the Court should not permit Diversi-Tech to waste the Court's or Cequent's time by shotgunning additional summary judgment motions based on the evidence that Diversi-Tech already has or could have presented in the present motion.

III.   **CONCLUSION**

For the foregoing reasons, Diversi-Tech has failed to meet it burden of clear and convincing evidence on the factual issue of invalidity by anticipation under 35 U.S.C. §§ 102(a) or 102(b) and 35 U.S.C. § 103. Cequent respectfully requests that the Court deny Diversi-Tech's motion for summary judgment.

Respectfully submitted,

Dated: August 31, 2005                    _____/s/ David T. Movius_____
                                          Michael L. Snyder (*pro hac vice*)
                                              *msnyder@mcdonaldhopkins.com*
                                          David T. Movius (*pro hac vice*)
                                              *dmovius@mcdonaldhopkins.com*
                                          David B. Cupar (*pro hac vice*)
                                              *dcupar@mcdonaldhopkins.com*
                                          McDONALD HOPKINS CO., LPA
                                          2100 Bank One Center
                                          600 Superior Avenue, E.
                                          Cleveland, Ohio 44114
                                          Telephone: (216) 348-5400

                                          Edward R. Conan (101387)
                                              *econan@bsk.com*
                                          Maria P. Vitullo (511561)
                                              *mvitullo@bsk.com*
                                          One Lincoln Center
                                          Syracuse, NY 13202
                                          Telephone: (315) 218-8000
                                          Fax: (315) 218-8100

                                          *Attorneys for plaintiff*
                                          *Cequent Trailer Products, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 31, 2005, I electronically filed Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

James R Muldoon, Esq.
Wall, Marjama & Bilinski, LLP
101 South Salina Street, Suite 400
Syracuse, NY 13202-1937

Dated: August 31, 2005                           _____/s/David T. Movius_____
                                                 David T. Movius