UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CEQUENT TRAILER PRODUCTS, INC.,

        Plaintiff,

   -vs-                                  Civil Action No.:
                                              05-CV-0074 (NAM/GJD)
DIVERSI-TECH CORP.,

        Defendant.

---

### DEFENDANT'S REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
### <u>OF INVALIDITY BASED ON ANTICIPATION</u>

                                             WALL MARJAMA & BILINSKI LLP
                                             101 South Salina Street
                                             Suite 400
                                             Syracuse, New York 13202
                                             Tel: (315) 425-9000
                                             Fax: (315) 425-9114

                                             *Attorneys for Defendant*
                                               *Diversi-Tech Corporation*

Of Counsel:
 James R. Muldoon

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………. 1

I. DIVERSI-TECH HAS PROVIDED AMPLE CORROBORATION OF
   MR. BUDGE'S PRIOR INVENTION AND PUBLIC DISCLOSURES……. 1

   A. Budge's Testimony is Corroborated by Notarized Drawings……………. 3
      and the 2000 Prototype

   B. Budge's Testimony is Corroborated by Musgrave Testimony…………… 4

   C. Budge's Testimony is Corroborated by Circumstantial
      Evidence of Improvements in the August 2001 Budge Drawings……….. 6

II. PLAINTIFF'S MIS-STATEMENT OF FACTS AND TESTIMONY…………... 7

   A. Mr. Carpenter's Lack of Knowledge or Recollection Does Not
      Disprove Budge's Construction of a Prototype in August 2000…………. 7

   B. Mr. Musgrave Testified that He Did Not Recall Any Sticker
      or Decal on the Prototype in 2000……………………………………….. 7

   C. Diversi-Tech's Continuing Improvements to its Locks
      Do Not Render the Original Prototype Non-Functional………………….. 9

CONCLUSION……………………………………………………………………..10

## **TABLE OF AUTHORITIES**

*3M Unitek Corp. v. Ormco Co.*, 96 F.Supp.2d 1042 (C.D. Cal. 2000) ............................... 5

*Cooper v. Goldfarb*, 154 F.3d 1321 (Fed. Cir. 1998) ......................................................... 2

*Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) .................. 2

*Harrington Mfg Co., v. Powell Mfg. Co.*, 815 F.2d 1478 (Fed. Cir. 1986) ......................... 9

*In re Theis*, 610 F.2d 786 (CCPA 1979) .............................................................................. 9

*Knorr v. Pearson,* 671 F.2d 1368 (CCPA 1982) ................................................................. 2

*Price v. Symsek*, 988 F.2d 1187 (Fed. Cir. 1993) ............................................................. 1, 2

*Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*,
    264 F.3d 1344 (Fed. Cir. 2001) ................................................................................. 2, 3

*Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172 (Fed. Cir. 1999) ...................................... 2

*Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368 (Fed. Cir. 1998) ................... 2

**PRELIMINARY STATEMENT**

In Diversi-Tech's earliest correspondence with Plaintiff's attorneys, Paul Budge notified Cequent's counsel that "his coupler lock was designed, tested, and test marketed years ahead of the Cequent patent date" and that he had notarized documents attesting to his earlier invention.[1] On April 25, 2005, Diversi-Tech provided to Plaintiff's counsel copies of four declarations of disinterested witnesses attesting to the public use of Mr. Budge's prototype. Muldoon Decl., Ex. F. Unsurprisingly, on June 7, 2005, Diversi-Tech moved for summary judgment based upon the invalidating public use and prior invention by Mr. Budge.

Noticeably absent from Plaintiff's opposition to Diversi-Tech's motion is any contention that Mr. Budge's drawings and prototype do not disclose each and every limitation of the patent-in-suit, or that Plaintiff conceived of or built any embodiment of the patented lock before Mr. Budge. Rather, Plaintiff attempts to rely upon *gross misrepresentations* of deposition testimony which, when read in context, fully corroborates at least two critical invalidating events – (1) Mr. Budge's disclosure of his prototype to Larry Musgrave and his son in August 2000; and (2) Mr. Musgrave's public display of the prototype at a Las Vegas trade show in November 2000. These invalidating public disclosures are unrefuted and further corroborated by notarized documents, a physical prototype, and sworn testimony that clearly and convincingly establish the anticipation and invalidity of the claims of the '686 patent.

**I.    DIVERSI-TECH HAS PROVIDED AMPLE CORROBORATION OF MR. BUDGE'S PRIOR INVENTION AND PUBLIC DISCLOSURES**

It is well established law that a party claiming his own prior inventorship must proffer evidence corroborating his testimony. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). However, only an interested inventor's testimony requires corroboration before it can be

---

[1] *See* Letter from Budge to Earp dated October 29, 2004 attached as Exhibit 2 to Movius Affidavit.

1

considered. *Id.* at 1195; *see also Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1176 (Fed. Cir. 1999). Whether the proffered evidence sufficiently corroborates the alleged inventor's testimony is evaluated under a "rule of reason" analysis. *Price*, 988 F.2d at 1194. In applying the "rule of reason" test, "all pertinent evidence" is examined in order to determine whether the inventor's testimony is credible. *Id.* Each corroboration case must be decided on its own facts to determine whether the evidence as a whole is persuasive. *Cooper v. Goldfarb*, 154 F.3d 1321, 1331 (Fed. Cir. 1998). However, "there need not be corroboration for every factual issue contested by the parties." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1464 (Fed. Cir. 1998).

Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated. *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001). Circumstantial evidence about the inventive process, alone, may also corroborate. *Id.* at 1351, citing *Knorr v. Pearson,* 671 F.2d 1368, 1373 (CCPA 1982) ("[S]ufficient circumstantial evidence of an independent nature can satisfy the corroboration rule.") Additionally, oral testimony of someone other than the alleged inventor may corroborate an inventor's testimony. *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998) (identifying guiding factors on corroboration).

Plaintiff's opposition is premised on several material misrepresentations of deposition testimony of several witnesses, discussed in detail below, by which it argues determine that Mr. Budge's prototype was not built until after June 2002. However, when the testimony of the witnesses regarding the invalidating acts is examined, the undisputed and corroborated evidence establishes Mr. Budge's completion of an operable prototype of his invention in August 2000. In this case, Diversi-Tech has provided corroboration in all three forms – notarized

contemporaneous documents and a physical prototype; testimony by declaration and deposition; and circumstantial evidence that Plaintiff's contention of a June 2002 reduction to practice is illogical and contrary to the evidence of record.

### A. Budge's Testimony is Corroborated by Notarized Drawings and the 2000 Prototype

Documentary and physical evidence that is created at the time of invention is recognized as the most reliable proof of corroboration because it eliminates the risk of litigation-inspired fabrication or exaggeration. *Sandt Technology*, 264 F.3d at 1351. Mr. Budge created and had notarized a drawing of his invention on August 28, 2000. Plaintiff attempts to cast dispersion on the "purportedly notarized" documents. However, Plaintiff deposed the notary public, Diane McDaniel, and utterly failed to impeach the existence and execution of the Budge prototype drawing on August 28, 2000. The original technical documents and her notary logs were marked as exhibits and authenticated by Ms. McDaniel who recognized her original signature, her colored notary stamp and other handwriting. *See, e.g.,* McDaniel Dep. pp. 34-37. The most Plaintiff has to argue about is the existence of an immaterial staple hole in a corner of one of the original documents. *See* Muldoon Reply Decl. Ex. P. Yet, Mr. Budge testified that he thought that the document at one time had a cover sheet that no longer exists. Budge Dep. pp. 122-23.

In addition to the August 28, 2000 notarized document, Diversi-Tech produced the physical prototype of the first Budge lock design (Def. Dep. Ex. 4) that is substantially identical to the notarized drawing. *Compare* Budge Decl. Exs. A and C. Mr. Budge testified that this prototype was completed by August 2000 and that he had shown it to several trailer dealers during his testing on various types of trailer hitches and to get input on his design. Budge Dep. pp. 67-71. Indeed, it was the fact that he had shown his prototype to several individuals that led him to get the drawing notarized to establish independent evidence of his invention. *Id*. pp.49-51.

3

Mr. Musgrave's testimony corroborates both Mr. Budge's use of his trailers to test his lock and his public disclosure of the prototype to Mr. Musgrave for the purpose of seeking input on his invention. Musgrave Dep. pp. 13-14, 31. Mr. Musgrave affirmatively identified the Budge prototype (Defendant's Exhibit 4) as "identical" to and "the identical twin" of the lock that he was shown in August 2000 and of the lock that he displayed for twelve days at the Country Christmas Expo in November 2000. *Id.*, pp. 10, 12-16, 39-40.

The third contemporaneously created piece of physical evidence is Mr. Budge's drawing of his improved lock design which was witnessed by his patent attorney, Tom Fehr, and was also notarized on August 10, 2001. Mr. Budge testified that, upon receiving input from the dealers to whom he had disclosed his lock, he continued to work on improving his lock and incorporated features to address their input, such as making the lock more universal and locking both legs of the shackle. Budge Dep. pp. 85-87. These improved features are incorporated in the drawing witnessed and notarized on August 10, 2001, corroborating that the input from the dealers to the prototype would have to have been received before that date.

### B. Budge's Testimony is Corroborated by Musgrave Testimony.

Mr. Budge's consistent testimony was that he built and tested the first prototype between by August 2000. *See, e.g.*, Budge Decl. ¶¶ 6-7; Budge Dep., pg. 53, ll. 19-22; pg. 60, ll. 22-24. This fact is corroborated by the declarations of several witnesses, as well as deposition testimony of Larry Musgrave, a person knowledgeable in the trailer industry and the owner of a trailer business in St. George, Utah, for at least the past ten years. Musgrave Dep. pp. 10, 75. Mr.

Musgrave is a disinterested, non-party witness who has no agreements or business relationship with Diversi-Tech.[2]

Mr. Musgrave's testimony is un-contradicted and un-impeached that Mr. Budge showed him his prototype lock in August 2000 and asked for his input. Musgrave Dep., pg. 13, ll. 5-14. Mr. Musgrave named at least two individuals who work near his store that would have seen the Budge prototype in Dixie Automotive in the fall of 2000. *Id.,* pg. 50, ll. 8-19. Mr. Musgrave's testimony is further un-contradicted and un-impeached that, in November 2000, Musgrave displayed Budge's prototype at the Country Christmas Expo at the Sands Convention Center in Las Vegas. *Id.,* pg. 15, ln. 22 - pg. 16, ln. 4. Mr. Musgrave repeatedly identified the Budge prototype (Defendant's Exhibit 4) as "identical" to the lock that he was shown in August 2000 and to the lock that he displayed at the Country Christmas Expo. *Id.*, pp. 10, 12-16, 39-40. Mr. Musgrave testified as to numerous details of the 2000 Country Christmas trade show including his company's trailer he took to the show (pg. 19), the equipment he displayed (pp. 18-19, 21), the hotel at which he stayed (pg. 19), the manufacturer which sponsored Dixie's booth (pp. 18, 22), and the fact that he had to leave the show for an evening to bail his son out of jail (pp. 25-28). The substantial detail and lack of impeachment of Mr. Musgrave's corroborating testimony regarding the public displays of the prototype, his familiarity with the trailer industry, and his lack of any interest in this lawsuit are recognized factors in assessing the sufficiency of his corroborating testimony.

---

[2] Dixie Automotive purchases Diversi-Tech products from a national distributor, Carter Distributing, in Salt Lake City. Musgrave Dep. pg. 25, 56. A customer of a party is not an "interested" party for purposes of corroboration. *See 3M Unitek Corp. v. Ormco Co.*, 96 F.Supp.2d 1042, 1050 (C.D. Cal. 2000). Here, however, Dixie is merely a customer of a customer of a party.

5

### C. Budge's Testimony is Corroborated by Circumstantial Evidence of Improvements in the August 2001 Budge Drawings

The above discussed documents, physical prototype and testimony of disinterested witnesses directly corroborate Mr. Budge's testimony of his prior inventorship and public use and display of his original lock design. In addition to the direct evidence, circumstantial evidence further corroborates the timing of Mr. Budge's invention and public disclosure of his inventions.

Plaintiff argues that, based on material misrepresentations of deposition testimony described below, Mr. Budge did not reduce his invention to practice until June 2002, at which time he built the original prototype labeled as Defendant's Deposition Exhibit 4. As noted above, Mr. Budge received input from the trailer dealers and incorporated their input in a new, more universal and more secure design. A drawing of this improved design was witnessed by his patent attorney and notarized on August 10, 2001. Budge Decl. Ex. D. This design incorporated a wide body shackle that fits more, if not all, types of trailer hitches, and a dual slide pin configuration that locks into serrations on both legs of the shackle. This improved design eliminated the ability to defeat a single, spring-biased slide pin by striking it struck with a hammer and dislodging the lock from the coupler. Budge Dep. pp. 163-65, 174-77.

As contemporaneous documents establish the improved design existed in August 2001, there are no logical circumstances where Mr. Budge, particularly given the limited resources of an individual inventor, would produce in early 2002 his older, less capable design depicted in the August 2000 notarized drawing rather than his improved "wide-body," dual slide pin design depicted in the 2001 drawing. Plaintiff's argument, therefore, is simply contrary to the circumstantial evidence corroborating Mr. Budge's reduction to practice of his earlier design in August 2000 and the incorporation of the input from dealers in his August 2001 improvement.

6

## II.  PLAINTIFF'S MIS-STATEMENT OF FACTS AND TESTIMONY

### A.  Mr. Carpenter's Lack of Knowledge or Recollection Does Not Disprove Budge's Construction of a Prototype in August 2000

First, Plaintiff argues that Val Carpenter, owner of C.E. Industries, testified that "Mr. Budge did not build the allegedly-invalidating prototype until 2002." Opp. Mem., pg. 2. To the contrary, Mr. Carpenter testified that he did not know what Mr. Budge was working on in his shop in 1999 and 2000 and could not testify that Budge wasn't working on his coupler locks during that time. Carpenter Dep. Trans., pg. 16, ll. 5-24.[3] The fact that Mr. Carpenter could not corroborate the construction of the prototype in 2000 (nor did Diversi-Tech ever proffer him for that purpose) does not prove that the prototype was not built when Mr. Budge and other witnesses, who have current recollections of the Budge prototype, testified regarding its public uses and displays.

### B.  Mr. Musgrave Testified that He Did Not Recall Any Sticker or Decal on the Prototype in 2000

Plaintiff asserts that Mr. Larry Musgrave testified that the prototype lock, which was shown to him in August 2000 and that he displayed in his own store and at the Country Christmas Expo in November 2000, had a "DT" sticker on it that was not in use until mid 2002. This is also a misrepresentation of his testimony. In fact, Mr. Musgrave testified that to his recollection there was no sticker or decal on the prototype that he was shown and that he displayed at the trade show in Las Vegas in November 2000 or at least that he could not remember if there was one. Musgrave Dep. Trans., pg. 9, ll. 19-21, pg. 17, ll. 14-17; pg 18, ll. 1-

---

[3] Q. Do you recall Paul Budge ever coming into C.E. Industries and working on trailer coupler locks, sir?  ***
A. Yes. Q. When was that? A. Oh, it was around 2002, something like that.  ***
Q. Do you recall any time before that, even?
A. Not that I remember. I don't know. . . . I don't know what he was working on. I don't have time to go back and sit and visit with everybody in the place. . . . And I probably wouldn't remember. I'm not saying it didn't happen.

7

7.[4] Indeed, the testimony regarding the decal or sticker referred to by Plaintiff related to samples provided to Mr. Musgrave six months or longer after showing the prototype at the trade show.[5] Indeed, Mr. Musgrave could not recall specifically when the product during this later period had the DT decal. Musgrave Dep., pg. 65, ll. 10-11.

Additionally, Plaintiff attempts to cast dispersion upon Mr. Larry Musgrave by his failure to recall a purported conversation with Mr. Budge the day before his deposition. However, Mr. Budge testified that he made a very short stop ("two minutes") to Dixie Automotive during the lunch break of his deposition to check on the Musgraves' attendance at a deposition scheduled the next day. Budge Dep., pp. 142-43. Mr. Budge further testified that he talked to Brian Musgrave and that his father, Larry Musgrave, was "busy helping a customer" during the visit. *Id.,* pp. 143-44. Therefore, the explanation for the purported discrepancy in Mr. Musgrave's testimony was evident from the record and is immaterial in every respect.

Next, Plaintiff implies that Mr. Budge fabricated testimony regarding when the sticker was placed on the prototype after he was cross-examined regarding the date of first use in Diversi-Tech's trademark application. This implication is also false. In identifying his earlier version of his prototype Mr. Budge testified, on page 61 of his transcript, that he placed the "DT" sticker on the prototype "about two years ago." *See* Budge Dep. pg. 61, ll. 8-19. Mr. Budge was

---

[4] "I gave Paul back the feedback on what they thought of his product. There was no marketing. No stickers that I could see on the product that he gave me. As I recall." (Pg. 9, ll. 19-22.)
Q. Going back to this lock, back when you first saw it in 2000, did it have this DT on it, sir?
A. I don't remember whether there was any decals on it or not. (Page 17, lines 14-17)
Q. And do you remember -- back when you took a prototype from Paul Budge to the Country Christmas Expo in Las Vegas in the fall of 2000 . . . do you remember whether that prototype that you had with you had DT on it?
A. I don't recall that. (Pg. 18, ll. 1-7.)

[5] Q. Okay. And did those prototypes back in May of 2001, for example, have this kind of round key? * * * Did they each have this DT on them as well?
A. I can't remember the DT. But I think they did, because -- yeah, they did because the bumper ones had that DT on it.* * *
Q. Would it be accurate to say those were May 2001, give or take a month or two, maybe? * * *
A. It was either before, after or the 2001. More after that I would remember.

8

not asked about Diversi-Tech's trademark application until page 151 of his transcript – several hours after he had already testified that he placed the sticker on the prototype in order to display it in an office cabinet at Diversi-Tech.

> **C.     Diversi-Tech's Continuing Improvements to its Locks Do Not Render the Original Prototype Non-Functional**

Plaintiff further attempts to argue that because Mr. Budge was not satisfied with the level of security provided by his early prototype, that this prototype was not a reduction to practice. Such an assertion is not supported by the facts or the law. "There is no requirement that an invention function perfectly in order to be reduced to practice or considered as on sale or in public use. All that is necessary is that the invention be commercially operable; it may have problems which are not due to 'fundamental defects.'" *Harrington Mfg Co., v. Powell Mfg. Co.*, 815 F.2d 1478, 1481 (Fed. Cir. 1986), *quoting In re Theis*, 610 F.2d 786, 794 n. 11 (CCPA 1979).

Mr. Budge repeatedly testified that his prototype worked. Budge Dep. pg. 91, ln. 17 - pg. 93, ln. 3. Mr. Musgrave also corroborated through his testimony that the prototype that he was publicly shown by Mr. Budge in August 2000 worked.[6] Mr. Musgrave further testified that he publicly demonstrated the operation of the prototype at the Country Christmas trade show in November 2000.[7] The prototype still works today as evidenced by the photograph attached to

---

[6]  Q . . . did Paul Budge ask for your input in August of 2000 about this trailer coupler lock?     A. Yes, sir.
   Q. And what did you say to him?     A.   I thought it was a great idea.
   Q. Did it work?     A.   Yeah, it works.
   Q. Back then did it work?     A.   Yes. (pg. 14, ll. 9-17)

[7]  Q.  And what did people say out there about this product and --
   A.   They thought it was a good idea.
   Q.   And you said -- I'm not sure about this one, but at the point of the Las Vegas Country Christmas Expo back in the fall of 2000, did you test this prototype yourself at that point?
   A.   I put it in the goose ball and lock it and show them how it worked.
   Q.  So you tried it out?     A.   Oh, yeah.(Page 23, line 9-18)

the five witness declarations that shows the lock engaged on a trailer coupler. *See, e.g.*, Budge Decl. Ex. C.

Mr. Budge was not satisfied with the level of security that his hand-machined prototype achieved. As he testified at his deposition, Mr. Budge was pursuing a high-quality lock that was as secure as it could be. Budge Dep., pp. 177-179. He continues to improve his lock through this year. *See also* Musgrave Dep., pg. 24, ll. 11-22. However, Mr. Budge's efforts to improve his lock and include a wider shackle that universally fits all trailers and adding a second locking pin that is more resistant to potential thieves does not obviate the fact that his first prototype contained each and every element of the claims of the '686 patent. Rather, the improved features of Diversi-Tech's current lock, for which he has sought his own patent, result in increased sales and consumer recognition of its superiority such that where Diversi-Tech's and Cequent's locks are sold side-by-side, Diversi-Tech outsells its competition by approximately ten-to-one. Budge Dep., pg. 186, ll. 2-11.

## CONCLUSION

For reasons set forth above and in Diversi-Tech's original Memorandum of Law, the Court should grant summary judgment that Plaintiff's U.S. Patent No. 6,722,686 is invalid under 35 U.S.C. § 102.

Dated: September 9, 2005    Respectfully Submitted,

WALL MARJAMA & BILINSKI LLP

By:   *s/James R. Muldoon*
      James R. Muldoon
      (Bar Roll No. 506772)
101 South Salina Street, Suite 400
Syracuse, New York 13202
Tel: (315) 425-9000
Fax: (315) 425-9114
*Attorneys for Defendant*
  *Diversi-Tech Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2005, I electronically filed the Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment of Invalidity Based on Anticipation with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

>Edward R. Conan, Esq. (econan@bsk.com)
>Maria P. Vitullo, Esq. (mvitullo@bsk.com)
>Bond, Schoeneck & King, PLLC
>One Lincoln Center
>Syracuse, NY  13202
>315-218-8000
>
>David B. Cupar, Esq.,(dcupar@mcdonaldhopkins.com)
>David Movius, Esq. (dmovius@mcdonaldhopkins.com)
>Michael Snyder, Esq. (msnyder@mcdonaldhopkins.com)
>McDonald, Hopkins Law Firm
>600 Superior Avenue E.
>2100 Bank One Center
>Cleveland, OH 44114
>216-348-5400

>*s/James R. Muldoon*