UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**CEQUENT TRAILER PRODUCTS, INC.,**

                               **Plaintiff,**

                               **-v-**                                              **5:05-CV-0074**

**DIVERSI-TECH CORPORATION,**

                               **Defendant.**
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**APPEARANCES:**

MCDONALD HOPKINS, LLC
Michael L. Snyder, Esq., of Counsel
David T. Movius, Esq., of Counsel
David B. Cupar, Esq., of Counsel
600 Superior Avenue East, Suite 2100
Cleveland, Ohio  44114
and
BOND, SCHOENECK & KING, PLLC
Edward R. Conan, Esq., of Counsel
One Lincoln Center
Syracuse, New York 13202
and
TAFT, STETTINIUS LAW FIRM
Maria P. Vitullo, Esq., of Counsel
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Attorneys for Plaintiff

Harold L. Burstyn, Esq.
216 Bradford Parkway
Syracuse, New York 13224
Attorney for Defendant

**Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

On January 21, 2005, plaintiff Cequent Trailer Products, Inc. ("Cequent") commenced this

action under federal patent law, 35 U.S.C. §§ 100, *et seq.*, for damages and declaratory and

injunctive relief against defendant, Diversi-Tech Corporation ("Diversi-Tech").  Cequent claims that Diversi-Tech is selling a coupler lock that infringes at least one claim of Cequent's United States Patent No. 6,722,686 ("'686 patent"), which relates to a coupler locking device and method.  Currently before the Court is Diversi-Tech's motion (Dkt. No. 14) for summary judgment on the ground that the '686 patent is invalid.  As set forth below, the motion is denied.

## BACKGROUND

The '686 patent, in the sections headed "Abstract," "Field of Invention," and "Background of the Invention," explains that devices called coupler locks have long been used for security purposes to prevent the theft of unattended trailers.  Such devices attach to the portion of the trailer referred to as a trailer coupler, which is used to attach the trailer to a towing vehicle.  If the trailer coupler is left unsecured, any vehicle with a compatible hitch could tow away the trailer and its cargo.  A coupler lock deters such unauthorized towing by closing the socket portion of the trailer hitch coupler with a device that is locked in place, thereby preventing the trailer from being attached to the hitch of another vehicle.

The "Background of the Invention" portion of the '686 patent states that prior manifestations of the coupler lock were flawed because they utilized padlocks and other non-integral locking mechanisms to secure the socket of a trailer hitch, permitting thieves easily to access and tamper with the removable locking module in order to detach the device and tow away the trailer.  It further states: "The locking device of the present invention overcomes the disadvantages of the prior art devices by providing a device for closing the socket of a trailer hitch having an integral locking means."  The "Brief Summary of the Invention" states that "[i]t is an object of the present invention to provide a coupler lock having an integral locking mechanism to deter the tampering with or removal of the locking mechanism."  It further states that the object

-2-

is achieved through "providing a device for closing the socket of a trailer hitch ... generally comprising a locking bar and a base having a plug member, a locking bar-receiving aperture, and an integral locking means for lockingly engaging the locking bar within aperture."

The application for the '686 patent was filed on May 1, 2002. The patent issued on April 20, 2004. In this action, Cequent, assignee of the '686 patent, claims that it manufactures and sells a device covered by the patent called the "Gorilla Guard Universal Coupler Lock"; that Diversi-Tech manufactures and sells a product called the "DT Maximum Security Universal Coupler Lock"; and that the Diversi-Tech product infringes at least one claim of the '686 patent.

Diversi-Tech contends that the '686 patent is invalid because an invention in 2000 by its corporate manager Paul W. Budge predates the filing of the '686 patent application on May 1, 2002. It is Diversi-Tech's position that Budge conceived of a coupler lock device ("Budge Coupler Lock") no later than August 28, 2000, when he had a drawing of it notarized; that he built several versions of a prototype of this lock design during the summer and fall of 2000; that the prototypes functioned properly; that thereafter he showed a prototype to numerous local dealers for them to show their customers; and that the prototypes were publicly displayed at four commercial businesses in Utah and at a trade show in Nevada during late 2000 and early 2001. Diversi-Tech avers that there are no significant differences between the prototype of the Budge Coupler Lock and the claims of the '686 patent.

On this motion for summary judgment, Diversi-Tech argues that it has introduced clear and convincing evidence that the Budge Coupler Lock was known and/or used within the meaning of 35 U.S.C. § 102(a) and (b) prior to May 1, 2002, the date the '686 application was filed. Thus, Diversi-Tech argues, the '686 patent is invalid on the ground of anticipation.

**STANDARD ON SUMMARY JUDGMENT**

"[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006) (internal quotation marks omitted). A dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DISCUSSION

Issued patents enjoy a presumption of validity under 35 U.S.C. § 282. This presumption can only be overcome by clear and convincing evidence. *See Norion Corp. v. Stryker Corp.*, 363 F.3d 1321, 1326 (Fed. Cir. 2004). Here, Diversi-Tech urges that the Budge invention anticipated the device claimed in the '686 patent, thus rendering the '686 patent invalid under 35 U.S.C. § 102(a) and (b).[1] Under subdivision (a) of section 102, a patent is barred where the invention was known or used by others before the invention thereof by the patent applicant. 35 U.S.C. § 102(a). For purposes of section 102(a), a patent applicant's date of invention is presumed to be the date on which the patent application was filed, unless there is evidence to the contrary. *See Mahurkar*

---

[1] 35 U.S.C. § 102(a) and (b) provides:
    A person shall be entitled to a patent unless--
    (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
    (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]

*v. C.R. Bard, Inc*., 79 F.3d 1572, 1576 (Fed. Cir. 1996). Under subdivision (b), an inventor is entitled to a patent unless the invention was in public use more than one year prior to the date of the application for the patent. Because anticipation is a question of fact, "summary judgment is proper if no reasonable jury could find that the patent is not anticipated." *Telemac Cellular Corp. v. Topp Telecom, Inc*., 247 F.3d 1316, 1327 (Fed. Cir. 2001) (citations omitted). To be entitled to summary judgment, therefore, Diversi-Tech must establish that there are no material facts in dispute relating to its assertion of anticipation, and must introduce clear and convincing evidence that the Budge Coupler Lock anticipates the claims of the '686 patent, that is, that it was known or used within the meaning of section 102(a) and/or (b) prior the filing of the '686 patent application on May 1, 2002.

Diversi-Tech's evidence in support of its contention that the Budge Coupler Lock anticipates the device disclosed in the '686 patent includes Budge's notarized drawing of the Budge Coupler Lock design, dated August 28, 2000. Budge testified at his deposition that in 2000 and 2001 he manufactured two prototypes that were identical to the notarized drawing. He stated that one was lost; the other was produced as evidence in this litigation (designated as Defendants' Exh. 4). He further testified that this prototype was completed by August 2000, that he had shown it to several trailer dealers to get their input on his design, and that, having shown his prototype to several people, he decided to get the drawing notarized.

On this motion, Diversi-Tech also submits Budge's declaration stating that he showed the prototype of his first coupler lock design to dealers including TJ's Rentals and U-HAUL ("TJ's Rentals") in St. George, Utah; Dixie Automotive and Trailer Sales ("Dixie Automotive") in St. George, Utah; Petersen Marine in Ogden, Utah; Big Bubba's Trailers in Ogden, Utah; TJ's Trailers in Ogden, Utah; and Wasatch Trailers in Layton, Utah. He stated that he gave samples of

-5-

the prototype to TJ's Rentals and Dixie Automotive to display and show to their customers.

Diversi-Tech further relies on the declarations of James and Jon Rimer of TJ's Rentals, and Brian L. and Larry W. Musgrave of Dixie Automotive, all four of whom declared that they publicly displayed the Budge Coupler Lock in their stores during the years 2000 and 2001. Larry Musgrave, owner of Dixie Automotive, identified in his deposition the Budge prototype (Defendant's Exh. 4) as identical to the lock that he was shown by Budge in August 2000, and testified that he displayed it for twelve days at the Country Christmas Expo in November 2000. Both Budge and Larry Musgrave testified that the 2000 prototype worked. Budge also testified that, after showing the lock to dealers in 2000, he continued improving it and incorporated their suggestions, specifically making the lock more universal and locking both legs of the shackle. Budge further testified that these improvements were incorporated into another drawing, which his patent attorney, Thompson E. Fehr, Esq., witnessed and notarized on August 10, 2001.

In opposition, Cequent contends that the prototypes were not known or used within the meaning of section 102(a) and/or (b) until after June 1, 2002. In support of this contention, it relies on deposition evidence from James Rimer of TJ's Rentals that the display of the lock (which TJ's Rentals allegedly displayed in 2000) bore a "DT" trademark. This is significant because Diversi-Tech's federal trademark application for the DT mark states that it did not use the mark in commerce until after June 1, 2002, thus suggesting that Rimer could not have displayed the lock prior to that date. It is true that Budge testified that he placed the "DT" sticker on the prototype "about two years ago" (*i.e.*, about 2003); this does not, however, negate Rimer's recollection, but rather raises a question of fact.

Similarly, Larry Musgrave of Dixie Automotive stated that samples which Dixie Automotive allegedly displayed in or around May 2001 bore the DT mark. It is not clear that

-6-

these samples were necessarily the same as the prototype he took to the November 2000 trade show; nevertheless, at the least this statement is inconsistent with Diversi-Tech's statement in the trademark application that it did not use the DT mark in commerce until after June 1, 2002, and raises an issue of credibility.

Further, Cequent maintains that the Budge Coupler Lock design was not reduced to a working prototype, and therefore could not have been known or in use, until 2002 at the earliest. Cequent relies on the testimony of Val Carpenter, the owner of C.E. Industries, where Mr. Budge claims to have built the prototype of his coupler lock. Carpenter did not clearly remember when Budge worked on his prototype, but when specifically asked whether he first saw the prototype (Defendant's Exh. 4) in 2000 or 2002, Carpenter stated: "[I]t had to be around 2002, because before that it was the metal stud business he was involved [in], and there wasn't any activity on this before that."

In addition, Cequent points to a letter from Budge to Robert H. Earp, III, Esq., Cequent's patent counsel, dated October 27, 2004, in which Budge stated that his original prototypes "failed miserably" when he tested them. In his deposition, Budge stated that he performed this testing in 2002 and 2003. Cequent also relies on a letter from Diversi-Tech's counsel to Earp, dated September 21, 2004, indicating that when tested in 2002, the device failed when struck lightly with a hammer. As Cequent argues, this evidence suggests that Budge's prototype was not reduced to practice prior to 2002 or 2003 and could not have been known or in use before then.

There is record evidence sufficient to raise material questions of fact regarding whether the Budge Coupler Lock was known or used within the meaning of section 102(a) and/or (b) prior to May 1, 2002, the date the '686 patent application was filed. Diversi-Tech has not established as a matter of law by way of clear and convincing evidence that the Budge Coupler Lock

anticipates the claims of the '686 patent such that the patent is invalid under 35 U.S.C. § 102(a) and/or (b).  In addition, Diversi-Tech is not entitled to summary judgment on the ground that various prior art references, if combined with the public use of the Budge Coupler Lock prototype, would render the '686 patent invalid due to obviousness.  *See* 35 U.S.C. § 103.

**CONCLUSION**

It is therefore

ORDERED that the motion (Dkt. No. 14) by Diversi-Tech Corporation for summary judgment is denied.

IT IS SO ORDERED.
September 30, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge